Susan J. ROMMELFANGER, Petitioner-Respondent,

v.

Dean P. ROMMELFANGER, Appellant.

Court of Appeals

*No. 82–1266. Submitted on briefs March 11, 1983.— Decided June 27, 1983.*
(Also reported in 337 N.W.2d 851.)

176

For the appellant the cause was submitted on the briefs of *Santo J. Ferris* and *Bernard J. Lepgold* of counsel, of Milwaukee.

For the petitioner-respondent the cause was submitted on the briefs of *Gimbel, Gimbel & Reilly,* with *Richard E. Reilly* and *Jeffrey A. Kaufman* of counsel, of Milwaukee.

Before Wedemeyer, P.J., Decker and Moser, JJ.

MOSER, J.   Dean P. Rommelfanger (Dean) appeals from a judgment of divorce entered in the trial court on June 18, 1982.  He raises two issues on appeal: (1) whether the trial court abused its discretion by considering Dean's retirement benefits under the Railroad Retirement Act of 1974[1] when dividing the marital estate; and (2) whether the division of the estate was so excessive and unreasonable as to constitute an abuse of discretion. We reverse the trial court's division of the marital estate.

A trial court's division of property in a divorce action involves the exercise of discretion and will not be set

---

[1] 45 U.S.C. §§ 231 *et seq.* (1982).

aside on appeal absent an abuse of that discretion.[2] An abuse of discretion occurs when the trial court fails to consider proper factors, makes mistakes with respect to the facts upon which the division is based, or makes an award to a party which is either excessive or inadequate under the circumstances.[3]

In dividing the marital estate in this case, the trial court considered Dean's federal railroad retirement pension and his wife's, Susan J. Rommelfanger's (Susan), pension from Milwaukee county. Each party was awarded his or her own pension. The shared estate was divided in a manner which awarded each party one-half the value of their total property, both shared and separate. The parties' retirement benefits were included in determining the total value of their property.

Dean argues that a nonemployee's spouse's right to a railroad pension terminates upon divorce. We agree.

The Railroad Retirement Act gives a worker's spouse the right to a separate benefit;[4] however, this right terminates upon divorce.[5] Indeed, the United States Supreme Court has recognized in *Hisquierdo v. Hisquierdo*[6] that, upon divorce, this pension becomes the employee's exclusively.[7] The Supreme Court ruled that, upon di-

---

[2] *Dean v. Dean,* 87 Wis. 2d 854, 877, 275 N.W.2d 902, 912 (1979).

[3] *DeWitt v. DeWitt,* 98 Wis. 2d 44, 53, 296 N.W.2d 761, 765 (Ct. App. 1980).

[4] 45 U.S.C. § 231a(c)(3).

[5] 45 U.S.C. § 231d(c)(3).

[6] 439 U.S. 572 (1979).

[7] *Id.* at 583–85. We note that the Supreme Court took a similar position in *McCarty v. McCarty,* 453 U.S. 210 (1981), holding that a military pension was the exclusive property of an employee upon divorce. Congress, in effect, reversed this case by Pub. L. 97–252, Title X, § 1002(a), 96 Stat. 730 (1982), effective February 1, 1983, which became 10 U.S.C. § 1408 which makes a military pension subject to a divorce property division. However, Congress did not amend 45 U.S.C. § 231m in any way since *His-*

vorce, this pension is exclusive because to allow any diminution of that amount would frustrate the congressional objectives behind the Railroad Retirement Act, i.e., to support an employee's old age and to encourage the employee to retire.[8]

To facilitate this objective, Congress inserted an antigarnishment provision in the Act. That provision is contained in 45 U.S.C. § 231m, which states:

§ 231m.   Assignability; exemption from levy
Notwithstanding any other law of the United States, or of any State, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated: *Provided, however,* That the provisions of this section shall not operate to exclude the amount of any supplemental annuity paid to an individual under section 231a(b) of this title from income taxable pursuant to the Federal income tax provisions of the Internal Revenue Code of 1954 [26 U.S.C.A. § 1 *et seq.*]. [Emphasis in original.]

The Supreme Court, recognizing the importance of 45 U.S.C. § 231m, stated: "[s]ection 231m goes far beyond garnishment. It states that the annuity *shall not be subject to any 'legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated.'* Its terms make *no exception* for a spouse."[9]   [Emphasis added.]

The trial court here did not directly award Susan a portion of Dean's railroad pension; however, the trial court did consider it in its division of the marital estate, stating:

---

*quierdo* was decided. Therefore, we view this as Congress' approval of the position taken by the Supreme Court in *Hisquierdo.*

[8] *Hisquierdo, supra* note 6, at 585.

[9] *Id.* at 586.

While the case law seems to say the petitioner [Susan] cannot be awarded any portion of the Railroad Retirement Annuity, this court knows of no case law which states that the court may not consider the same in making a division. Therefore, each will be awarded their pension plans free and clear of any claim from the other.

Numerous courts from other jurisdictions, both common law and community property states, have dealt with the issue of whether a state divorce court can indirectly consider a railroad pension in dividing the marital estate. The Montana Supreme Court, dealing with application of *Hisquierdo* to a similar factual situation, stated:

The [Supreme] Court further noted that the antigarnishment section of the Act, section 231m, protects not only a direct distribution of a share of a pension, but also an indirect distribution by an offsetting award, that is, an award to compensate the nonemployee spouse for retirement benefits not directly received. The Court concluded that an offset as well as a direct interest in the pension would frustrate the purpose of the Act.[10]

The Michigan Court of Appeals, also applying *Hisquierdo* to a similar factual situation, stated: "That statute [45 U.S.C. § 231m] was construed in [*Hisquierdo*] to preclude awarding the wife any portion of such retirement benefits *or their monetary equivalent.*"[11] [Emphasis added.] That court went on to state that railroad retirement benefits are not part of the marital estate and cannot be considered "directly or indirectly" in the distribution of property.[12]

The Texas Supreme Court, also discussing *Hisquierdo*, stated: "[the Supreme Court] further held that state courts in community property states may not 'anticipate' such benefits by awarding upon divorce such other prop-

[10] *In re Marriage of Knudson*, 606 P.2d 130, 132 (Mont. 1980).

[11] *Kendall v. Kendall*, 307 N.W.2d 457, 458 (Mich. App. 1981).

[12] *Id.* at 458–59.

erty of the parties that would compensate the non-employee spouse for the denied benefits in the retirement."[13]

The Washington Supreme Court, also dealing with a *Hisquierdo* problem, stated: "[u]nder this unmistakable holding of the United States Supreme Court, the courts of this state have no jurisdiction over railroad retirement benefits and plaintiff has no interest in them of any kind."[14] That court went on to state:

> From the language of *Hisquierdo,* however, it is plain that it is not the law of a particular state which must be examined to see if it is consonant with the railroad retirement act, but rather that section 231m "pre-empts all state law that stands in its way." *Any* disposition by a state court which takes into account the benefits to the railroad worker "causes the kind of injury to federal interests that the Supremacy Clause forbids. It is not the province of state courts to strike a balance different from the one Congress has struck."[15] [Emphasis in original.] [Citations omitted.]

Lastly, the Illinois Appellate Court has also acknowledged that *Hisquierdo* makes an employee's railroad retirement benefits his or hers exclusively upon divorce.[16]

■ We determine that the above cases are persuasive and shed light on this court's disposition of the instant appeal. We conclude that to consider a railroad pension in any manner whatsoever would frustrate the congressional intent behind the Railroad Retirement Act and be a violation of the Supremacy Clause.[17] We, like the courts in

---

[13] *Eichelberger v. Eichelberger,* 582 S.W.2d 395, 401 (Tex. 1979). We note that Texas is a community property state.

[14] *Larango v. Larango,* 610 P.2d 907, 908 (Wash. 1980). We note that Washington is also a community property state.

[15] *Id.*

[16] *In re Marriage of Hunt,* 397 N.E.2d 511, 520–21 (Ill. App. 1979).

[17] U.S. Const. art. VI, cl. 2.

the states above, can see no effective difference between a pension that is actually divided between the parties and one whose value is taken into account when the divisible marital assets are calculated. Either method results in the consideration of the railroad pension which is prohibited under *Hisquierdo*.

Accordingly, we hold that the trial court abused its discretion in the division of the marital estate. Because this pension cannot be considered in any manner, we must remand the cause to the trial court for a new division of the marital estate.

*By the Court.*—Judgment reversed and cause remanded for further proceedings not inconsistent with this opinion.