**Cookson v. Cookson**

*Walton V. Davis*, for plaintiff.
*Ronald J. Hagarman*, for defendant.

KUHN, *J.*, October 28, 1986 — Michael and Heidi were married on June 26, 1959. The parties subsequently separated, and on September 27, 1982, Michael filed a complaint in divorce and included therein a claim for equitable distribution. Heidi has

asserted her entitlement to alimony. On May 7, 1986, a master was appointed.

Michael is an employee of the Chessie Railroad System, and therefore may be eligible for certain retirement benefits as set forth under the Railroad Retirement Act, 45 U.S.C. §231, et seq. On September 26, 1986, Heidi requested the court compel Michael to produce, inter alia, all information relating to Michael's potential railroad retirement benefits. Michael has resisted the production and review of certain benefits under the authority of *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S. Ct. 802, 59 L.Ed. 2d 1 (1979) and *Padezanin v. Padezanin*, 341 Pa. Super. 26, 491 A.2d 130 (1985).

The present issue is whether and to what extent the master can consider Michael's retirement benefits for equitable distribution and alimony purposes.

Section 401(d) of the Divorce Code, 23 P.S. §401(d) requires a court to equitably divide marital property between the parties after considering all relevant factors, including 10 factors specifically itemized. Section 501(b) of the code sets forth 14 specific factors for consideration before awarding alimony.

Marital property subject to distribution includes all property acquired by either party during the marriage, with certain exceptions not applicable here. Section 401(e). Ordinarily, a spouse's pension rights, to the extent accumulated during the marriage, constitutes a form of marital property subject to consideration without regard to the possible contingent nature of the pension or whether it has vested or matured. *Flynn v. Flynn*, 341 Pa. Super. 76, 491 A.2d 156 (1985).

However, *Hisquierdo*, supra, ruled that where a state's family law comes into conflict with a federal statute, the Supremacy Clause requires that the

state law be pre-empted. There, in a case arising out of a community property state (California), the wife sought an offsetting award of presently available community property to compensate her for her husband's interest in his railroad retirement benefits. Relying upon section 231m[1] of the Railroad Retirement Act of 1974, 45 U.S.C. §231m, the court held that an offsetting award would upset the federal statutory scheme and denied wife's request.

The federal statutory scheme set forth in the Railroad Retirement Act was designed to encourage older workers to retire by providing retirement security. The act resembles both a private pension and a social security system. There are two tiers of benefits: (1) the upper tier, which, like a private pension, is tied to earnings and length of service, 45 U.S.C. §231(a)(1), and (2) the lower tier, which corresponds exactly to the benefits the employee would expect to receive if covered by the Social Security Act, 45 U.S.C. §231b(a) (1). 59 L.Ed. 2d at 7. Benefits for spouses terminate when the spouse and employee are absolutely divorced. 45 U.S.C. §231d(c) (3).

---

1. "§231m. Assignability; exemption from levy

"Notwithstanding any other law of the United States, or of any state, territory, or the District of Columbia, no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated; provided, however, that the provisions of this section shall not operate to exclude the amount of any supplemental annuity paid to an individual under section 2(b) of this act [45 USCS §231a(b)] from income taxable pursuant to the federal income tax provisions of the Internal Revenue Code of 1954 [26 USCS §§1 et seq.]. (August 29, 1935, ch 812, §14, as amended October 16, 1974, P.L. 93-445, Title I, §101, 88 Stat. 1345.)"

Because Congress fixed an amount which it felt appropriate to support an employee's old age and to encourage retirement, any diminution of that amount would frustrate the statutory objective. 59 L. Ed. 2d at 13. Section 231m was therefore included in the act to protect the benefits from state court decisions which would adversely affect the incentives Congress intended.

Community property in California includes property earned by either spouse or given to both during the marriage. In *Hisquierdo*, supra, the husband, aged 55, had been a railroad employee for 33 years and was entitled to benefits when he reached age 60. The California Supreme Court held that because the benefits flowed, in part, from husband's employment during the marriage they were, to that extent, community property. The wife sought other community property (the house) as an offset to compensate her for her interest in the expected railroad retirement benefits.

The United States Supreme Court held that any offset would upset the statutory scheme and adversely affect the husband's economic security as surely as a direct deduction from his check. An offsetting would be an improper anticipation under section 231m because it would allow the wife to receive her interest (the house) before the date the act set for husband's interest in the benefits to accrue (his 60th birthday). Prior to that date, the employee could die, he could change jobs, or Congress could amend the act, all of which could substantially diminish the employee's benefits below the amount expected when the lump sum community property award is entered. 59 L.Ed. 2d at 15-16. For this reason, the United States Supreme Court reversed the California decision.

In 1985, the Pennsylvania Superior Court, in *Padezanin,* supra, on the basis of *Hisquierdo,* reversed and remanded a trial court's property distribution which gave husband his vested railroad retirement pension but compensated wife with other marital property equal to one-half the value of the pension. On remand, however, the trial court was directed to consider the effect of the 1983 amendment to section 231m of the act which allows some of the benefits to be valued as marital property and then distributed upon divorce.

The 1983 amendment is set forth in section 231m(b)(2):

"The section *shall not operate to prohibit the characterization or treatment* of that portion of an annuity under this act which is not computed under section 3(a), 4(a), or 4(f) of this act [45 USCS §231b(a), 231c(a) or (f)], or any portion of a supplemental annuity under this act, *as* community property for the purposes of, or *property subject to, distribution in accordance with a court decree of divorce,* annulment, or legal separation or the terms of any court-approved property settlement incident to any such court decree. The board shall make payments of such portions in accordance with any such characterization or treatment or any such decree or settlement. (As amended August 12, 1983, P.L. 98-76, Title IV, §419(a), 97 Stat. 438) (emphasis supplied).

This amendment represents a radical change in the statutory scheme since *Hisquierdo* was decided in 1979. Now those portions of the employee's annuities (the "upper tier") not computed under sections 231b(a), 231(a) or 231c(f), could be considered marital property and not be in violation of the Supremacy Clause or the holding of *Hisquierdo.* The statutory language of section 231m(b)(2) leaves to the states to determine whether the bene-

fits are subject to distribution. On the basis of *Flynn,* supra, we believe Pennsylvania would elect to subject the benefits to distribution.

Heidi contends that despite *Hisquierdo* and *Padenzanin* the master is entitled to "consider" the "lower tier," sections 231b(a), 231c(a) and 231c(f) benefits as a factor under section 401(d)(3), (5), (6), (8) and (10) and section 501(b)(3), (4) and (10). Michael counters that any consideration would result in anticipation or offset, to some degree, by the master.

We agree that these benefits remain "nonmarital" and not subject to anticipation or offset under *Hisquierdo,* supra. However, neither *Hisquierdo,* supra, or *Padenzanin,* supra, addressed whether the benefits could be *considered* as an economic factor by the divorce master or trial court.

Our courts have not decided this question although it is clear that the purposes of the Divorce Code cannot be effectuated without considering all relevant factors that would result in economic justice. *Semasek v. Semasek,* 331 Pa. Super. 1, 479 A.2d 1047 (1984); *Estep v. Estep,* 326 Pa. Super. 404, 474 A.2d 302 (1984).

In reviewing the decisions of our sister states, the court and counsel have only been able to locate one case which held that railroad retirement benefits may be considered by the trial court as an economic circumstance of the parties in apportioning marital assets. *In re Marriage of Roark,* 35 Wash. App. 252, 659 P.2d 1133 (1983).

On the contrary, several states have held that any disposition of marital assets which takes into account the value of railroad retirement benefits would frustrate the federal interests that the Supremacy Clause protects. *Rommelfanger v. Rommelfanger,* 114 Wis. 2d 175, 337 N.W. 2d 851

(1983); *Kendall v. Kendall,* 106 Mich. App. 240, 307 N.W. 2d 457 (1981); *In re Marriage of Judson,* 606 P.2d 130 (Mont., 1980); *In re Marriage of Schissel,* 292 N.W. 2d 421 (Iowa, 1980).

Likewise, the states are split on whether to consider military nondisability retirement pay in dissolution proceedings despite the United States Supreme Court pronouncement in *McCarty v. McCarty,* 453 U.S. 210, 101 S. Ct. 2728, 69 L.Ed. 2d 589 (1981), which held that such benefits cannot be divided as marital property. Courts holding that it is necessary to consider nonmarital military retirement pay as an economic circumstance in order to make a just and equitable distribution of property or as a factor to consider in awarding alimony include, *Tinsley v. Tinsley,* 431 So. 2d 1304 (Ala. Civ. App., 1983); *In re Marriage of Dessauer,* 97 Wash. 2d 831, 650 P.2d 1099 (1982); *In re Marriage of Hapaniewski,* 107 Ill. App. 3d 848, 438 N.E. 2d 466 (1982); *Gronquist v. Gronquist,* 7 Kan. App. 2d 584 644 P.2d 1365 (1982); *Bugg v. Bugg,* 277 S.C. 270, 286 S.E. 2d 135 (1982). See also, *Sobello v. Sobello,* 21 D.&C.3d 187, 195 (1981). Courts ruling to the contrary include *Pheil v. Pheil,* 115 Wis. 2d 502, 342 N.W. 2d 699 (1983) and *Landanarf v. Landanarf,* 441 A.2d 641 (Del. Fam. Ct., 1981).

Without further direction we feel compelled to follow the *Roark,* supra, and *Dessauer,* supra, approach and strike a balance between the federal interests and the stated purposes of the Divorce Code. True equity cannot be achieved without a consideration of the total economic circumstances of the parties. We conclude, therefore, that sections 231b(a), 231c(a) and 231c(f) benefits should be disclosed to the master. The master may not treat the benefits, if any, as marital property. Neither may he

offset to the nonemployee spouse property due to the value of the expected benefits. He may, however, consider the benefit as an economic circumstance of the parties for both equitable distribution and alimony purposes.

Accordingly, we enter the following

## ORDER

And now, this October 28, 1986, upon consideration of defendant's motion to produce documentation and statistical records plaintiff is hereby ordered to provide to defendant any information available from the United States Railroad Retirement board as to the value of his benefits under 45 U.S.C. §231b(a), 231c(a) and 231c(f). Said information shall be admissible at the master's hearing in a manner consistent with the above opinion.