IN RE the MARRIAGE OF: Gladys JACOBS,†
Petitioner-Appellant,

v.

Neil JACOBS, Respondent.

Court of Appeals

*No. 86–0786. Submission on briefs December 3, 1986.—Decided
March 3, 1987.*

(Also reported in 405 N.W.2d 668.)

† Petition to review denied.

For the petitioner-appellant, there was a brief submitted by *Stephen J. Menard* of *Eberlein, Gansen & Menard* of Shawano.

For the respondent, there was a brief submitted by *William B. Kulkoski* of *Olson, Kulkoski, Galloway, Olson & McKloskey, S.C.* of Green Bay.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   Gladys Jacobs appeals her divorce judgment, claiming that because of federal preemption and the tribe's tradition of self-government, the trial court does not have authority to include in the property division the value of a home located on the Stockbridge-Munsee Indian Reservation. We disagree and affirm the judgment.[1]

---

[1]Neil asserts that Gladys waived her challenges by failing to raise this issue at the trial level. As a general rule, the court of appeals will not consider issues first raised on appeal but may do

The material facts are undisputed. Gladys and her former husband, Neil Jacobs, are enrolled members of the Stockbridge-Munsee Indian Tribe. The Stockbridge-Munsee Indian Reservation is located within the boundaries of Shawano County. Gladys filed her divorce petition in Shawano County Circuit Court.

During their marriage, the Jacobses built a home on twenty acres of land within the Stockbridge-Munsee Reservation. By means of a written assignment, the tribe had granted Gladys the use and occupancy of the twenty-acre parcel. The assignment limits timber, water, and mineral rights and provides that rights granted thereunder may not be sold, and that transfer upon the death of the assignee requires the tribe's consent. The assignment further provides:

> 6. Buildings and other improvements placed upon the land by the assignee shall be recognized as personal property. ... However, no permanent improvements may be removed without the consent of the Tribal Council.

The court excluded the land from the marital estate and found that the fair market value of the home and improvements, apart from the land, was $50,000. It then awarded the residence to Gladys and ordered her to pay Neil $25,000 in monthly installments over twenty years with interest at 7%.[2] The court determined "that the terms of the land assign-

---

[2]The trial court did not attempt to secure the payment with a lien, but ordered that the judgment would be enforceable through contempt proceedings. We also note that the value of the home and improvements is not challenged on appeal.

ment from the Stockbridge-Munsee Indian Tribe govern the issues of the status of the residence and improvements thereon, and the land assignment says the residence and improvements thereon are personal property." The court ruled that the residence and improvements thereon are subject to property division.

The issues in this case require an interpretation of the land assignment. The interpretation of an unambiguous written document is a question of law. *American Mutual Liability Insurance Co. v. Fisher,* 58 Wis. 2d 299, 303–04, 206 N.W.2d 152, 155 (1973). The issues also require the application of a statute to an undisputed set of facts. This also presents a question of law, and we are not bound by the trial court's conclusions of law. *Manor v. Hanson,* 123 Wis. 2d 524, 533, 368 N.W.2d 41, 45 (1985).

Gladys first argues that federal law preempts the trial court's authority to order a division of property located on the reservation. We conclude that there is no federal preemption in this case. Initially, we note that the location of the property, in itself, has no bearing on the court's authority to order a property division. The parties submitted to its personal jurisdiction, *see Lees v. DILHR,* 49 Wis. 2d 491, 499, 182 N.W.2d 245, 250 (1971), and the court has subject matter jurisdiction over divorce proceedings.[3]

---

[3]A court has subject matter jurisdiction if it has the power to hear the kind of action brought. *Burmeister v. Vondrachek,* 86 Wis. 2d 650, 661, 273 N.W.2d 242, 247 (1979). Divorce proceedings are within the subject matter jurisdiction of a circuit court. *See* secs. 753.03 and 767.01, Stats.

We agree that a divorce decree cannot change title to real property that is beyond the territorial limits of the court's dominion. *Belleville State Bank v. Steele,* 117 Wis. 2d 563, 577, 345 N.W.2d 405, 412 (1984). Here, however, the trial court excluded the land from the property division. Moreover, a divorce court having personal jurisdiction over a party may order that party to execute a conveyance of real property outside the boundaries of its dominion. *Id.* at 577–78, 345 N.W.2d at 412. Consequently, the location of the Jacobses' property is not a bar to the exercise of the court's judicial power.

Gladys argues, nonetheless, that federal preemption bars the state court from ordering a property division involving the home. We disagree. The United States Supreme Court has rejected its earlier view that states are absolutely barred from applying state law to tribal reservations, and their members. *See State v. Webster,* 114 Wis. 2d 418, 433–34, 338 N.W.2d 474, 481–82 (1983). State laws may be applied to Indian reservations unless such application would interfere with tribal self-government, or impair a right granted to reservations by the federal government. *Rice v. Rehner,* 463 U.S. 713, 718 (1983) (citing *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148 (1973)). Recent cases have established a "trend ... away from the idea of inherent Indian sovereignty as a bar to state jurisdiction and toward reliance on federal pre-emption." *Rice,* 463 U.S. at 718 (quoting *McClanahan v. State Tax Commission,* 411 U.S. 164, 172 (1973)).

■
Gladys bases her federal preemption argument not on any treaty, nor federal regulatory scheme, but on 28 U.S.C.A. sec. 1360(b). *See Three Affiliated Tribes v. Wold Engineering,* — U.S. —, 106 S. Ct. 2305, 2310 (1986). Section 1360, commonly known as Pub. L. 280, unequivocally grants Wisconsin, among other states, civil jurisdiction over private causes of action between Indians arising within Indian country, including divorce. *Byran v. Itasca County,* 426 U.S. 373, 384 n. 10 (1976).[4] This grant, however, does not authorize the alienation, encumbrance, or taxation of Indian property, real or personal, held in federal trust or subject to federally imposed restrictions on alienation, nor does it authorize the regulation of such property. Moreover, it does not authorize the adjudication of ownership or right to possess such property. 28 U.S.C.A. sec. 1360(b) (West 1976).[5]

---

[4] 28 U.S.C.A. sec. 1360 (West 1976) further provides:

> [T]hose ... laws of such State or Territory that are of general application to private persons or private property shall have the same force and effect within such Indian country as they have elsewhere within the State or Territory.

Indian country is defined as:

> (a)   all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, ....

18 U.S.C.A. sec. 1151 (West 1984). Pub. L. 280 does not apply, however, on the Menominee Indian Reservation in Wisconsin. *Webster,* 114 Wis. 2d at 422–23, 338 N.W.2d at 476–77.

[5] 28 U.S.C.A. sec. 1360(b) provides:

> Nothing in this section shall authorize the alienation, encumbrance, or taxation of any real or personal property, including

The United States Supreme Court has repeatedly recognized that the subject of domestic relations belongs to the laws of the states and not the federal government. *McCarty v. McCarty*, 453 U.S. 210, 220 (1981). In order to decide if state family law has come into conflict with a federal statute, review is limited to determining "whether congress has 'positively required by direct enactment' that state law be preempted." *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 581 (1979) (citing *Wetmore v. Markoe*, 196 U.S. 68, 77 (1904)). "[T]he pertinent questions are whether the right as asserted conflicts with the express terms of federal law and whether its consequences sufficiently injure the objectives of the federal program to require nonrecognition." *Hisquierdo*, 439 U.S. at 583; *McCarty*, 453 U.S. at 221.

Applying these principles, we conclude that the trial court's order for property division neither conflicts with the express terms of federal law, nor injures any federal program, for at least two reasons. First, Gladys does not establish that the home is held in federal trust nor subject to federally imposed restrictions on alienation. To the contrary, the land assignment treats the home as severable from the land. By means of the land assignment, the tribe imposes

water rights, belonging to any Indian or any Indian tribe, band, or community that is held in trust by the United States or is subject to a restriction against alienation imposed by the United States; or shall authorize regulation of the use of such property in a manner inconsistent with any Federal treaty, agreement, or statute or with any regulation made pursuant thereto; or shall confer jurisdiction upon the State to adjudicate, in probate proceedings or otherwise, the ownership or right to possession of such property or any interest therein.

26

restrictions on alienation of the home, but there is no indication that any restrictions are federally imposed. The court carefully separated the home from the land and excluded the land from the marital estate. Accordingly, Gladys fails to show that 28 U.S.C.A. sec. 1360(b) applies to the home.

Second, even if 28 U.S.C.A. sec. 1360(b) applies to the home, the property division was not prohibited by its terms. The trial court did not transfer, tax, encumber nor alienate the home, nor adjudicate its ownership or possession. Rather, it recognized Gladys' right to use and occupy the land, and thereby the home, by virtue of the land assignment from her tribe. In so doing, the court implicitly found that the home was incapable of division and ordered payment of $25,000 to Neil as an offset of its value.

This case differs from *Rommelfanger v. Rommelfanger*, 114 Wis. 2d 175, 337 N.W.2d 851 (Ct. App. 1983), in which it was decided that federal law prohibited the state court from considering the value of railroad pension rights in a property division. In that case, we concluded that there was "no effective difference between a pension that is actually divided between the parties and one whose value is taken into account when the divisible marital assets are calculated." *Id.* at 181, 337 N.W.2d at 854. Either method was found to be prohibited by express language of 45 U.S.C.A. sec. 231m, which states that the annuity "shall not be subject to any 'legal process under any circumstances whatsoever nor shall the payment thereof be anticipated.'" *Rommelfanger,* 114 Wis. 2d at 178, 337 N.W.2d at 852–53. Here, there is no express language prohibiting the consideration of the value of the home in divorce proceedings.

27

Neither do the consequences of the property division damage any federally recognized program. Pub. L. 280 represents the primary expression of federal policy governing the assumption by states of civil jurisdiction over Indian nations. *Three Affiliated Tribes,* — U.S. at —, 106 S. Ct. at 2310. It was designed to extend state civil jurisdiction over Indian country. *Id.* at —, 106 S. Ct. at 2311. The federal interest in enacting it was to ensure that all citizens have access to a judicial forum. *Id.* at —, 106 S. Ct. at 2312. Thus, the exercise of judicial power in rendering this property division is not antagonistic to federal policies.

Next, Gladys argues that tribal sovereignty bars the court from exercising its power to enter a division of Indian property. She claims that a property division would impermissibly infringe upon the Indians' right to make and be governed by their own laws. *See Rice,* 463 U.S. at 718. We conclude that an examination of the state, federal, and tribal interests establishes that the application of state domestic relations laws does not interfere with tribal self-government in this case.

Divorce, like marriage, is of concern not only to the immediate parties. Both the state and the tribe have interests to be protected. In this case, however, there is no evidence of the tribe exercising its sovereign governmental authority in the resolution of domestic relations disputes. Nor is there evidence of any tribal court, code, or other forum for the Jacobses to resolve their domestic relations issues.[6]

---

[6]The only evidence in the record concerning the Stockbridge-Munsee self-government is that of the land assignment. The party alleging the existence of a foreign law has the burden of proof. *See*

Gladys contends that because ownership of the land is governed by the tribal council, state divorce laws cannot apply. We disagree. First, as previously discussed, the land was excluded from the marital estate. Consequently, the state does not infringe on tribal self-government regarding the ownership of the land. Second, although the land assignment gives evidence of a tradition of self-government, we conclude that a more specific code concerning domestic relations is required in order to bar the application of state law. *See County of Vilas v. Chapman,* 122 Wis. 2d 211, 214–15, 361 N.W.2d 699, 701 (1985).

In *Chapman,* our supreme court determined that because the Lac du Flambeau Band had no motor vehicle code in effect, a tribal member could be prosecuted for traffic offenses occurring on the reservation. The court contrasted the "alleged tradition of self-government by the Lac du Flambeaus" with the "elaborate system of traffic regulation by the Menominees." *Id.* at 215, 361 N.W.2d at 701; *see also Webster,* 114 Wis. 2d at 434–35, 338 N.W.2d at 482. The supreme court concluded that because the Lac du Flambeaus failed to enact a motor vehicle code, the state had authority to enforce its traffic regulations. Accordingly, because there is no evidence of a Stockbridge-Munsee domestic relations code or court, Gladys' claim of tribal infringement must fail.

Because the application of state domestic relations laws is not preempted by federal law, nor in this case infringes upon the right of the Stockbridge-Munsee Indians to establish and maintain tribal self-government, the trial court had authority to consider

---

*Bailey v. Hagen,* 25 Wis. 2d 386, 390–91, 130 N.W.2d 773, 775–76 (1964).

29

the value of the parties' home in making the property division.

*By the Court.*—Judgment affirmed.