STATE of Wisconsin, Plaintiff-Appellant-Petitioner,

v.

Kenneth BIG JOHN, Gilbert Chapman, Robert A. Chapman, Jerry A. Christensen, James Cross, Goldie Larson, Duane E. Poupart, John V. Snow and Steve K. St. Germain, Defendants-Respondents.

Supreme Court

*No. 86–1948. Submitted on briefs September 8, 1988.—Decided December 14, 1988.*

(Also reported in 432 N.W.2d 576.)

742

For the plaintiff-appellant-petitioner there were briefs by *Maureen A. McGlynn,* assistant attorney general, with whom on the brief was *Donald J. Hanaway,* attorney general.

For the defendants-respondents there was a brief by *James M. Jannetta, Kathryn L. Tierney* and *Lac du Flambeau Tribal Office,* Lac du Flambeau.

LOUIS J. CECI, J. This is a review of a decision of the court of appeals, *State v. Big John,* 140 Wis. 2d 322, 409 N.W.2d 455 (Ct. App. 1987), which affirmed an order of the circuit court for Oneida county, Robert E. Kinney, Circuit Judge, dismissing citations issued to each of the nine respondents. The issue presented for review is whether the State of Wisconsin (petitioner) has jurisdiction to enforce sec. 30.51(1), Stats., against tribal members of the Lac du Flambeau Band

of the Lake Superior Chippewa Indians (Band) who are operating motorboats registered pursuant to a tribal law upon state waters located off the Band's reservation. The court of appeals concluded that enforcing sec. 30.51(1) against the tribal members would infringe on the Band's right of tribal self-government, and, therefore, the state is without jurisdiction to proceed on the citations. We reverse.

The facts are undisputed. Nine enrolled members of the Lac du Flambeau Band of the Lake Superior Chippewa Indians were cited, between April 19 and April 23, 1986, by the Wisconsin Department of Natural Resources for operating unregistered motorboats on state waters outside the Band's reservation, in violation of sec. 30.51(1), Stats.[1] Each of the boats

---

[1]Section 30.51, Stats., provides as follows:

**"30.51 Certificate of number and registration; requirements; of exemptions. (1) Requirements** (a) *Certificate of number.* No person may operate, and no owner may give permission for the operation of, any boat on the waters of this state unless the boat is covered by a certificate of number issued under this chapter or is exempt from the certificate of number requirements of this chapter. A boat is not covered by a certificate of number unless the owner is issued a valid certificate of number card, the certificate sticker or decal is properly attached to and displayed on the boat and the identification number is properly displayed on the boat.

"(b) *Registration.* No person may operate, and no owner may give permission for the operation of, any boat on the waters of this state unless the boat is covered by a registration issued under this chapter or is exempt from the registration requirements of this chapter. A boat is not covered by a registration unless the owner is issued a valid registration card and the registration sticker or decal is properly displayed on the boat.

**"(2) Exemptions.** (a) *Exemptions from both certificate of number and registration requirements.* A boat is exempt from both the certificate of number and the registration requirements of this chapter if it is:

"1. A nonmotorized boat which is not a sailboat.

"2. A nonmotorized boat which is a sailboat but which either is 12 feet in length or less or is a sailboard.

"3. Covered by a valid certificate of number issued under federal law or a federally approved numbering system of another state, with the identification number properly displayed on each side of the forward half, but this exemption does not apply if the boat has been within this state for a period in excess of 60 consecutive days or if this state is the state of principal use of the boat.

"4. Operated within a period of 15 days after application for a certificate of number has been made and the required fee has been paid, if proof of application is carried on board.

"5. From a country other than the United States temporarily using the waters of this state.

"6. A military or public boat of the United States, except recreational-type public vessels.

"7. A boat whose owner is a state or subdivision of a state, which is used principally for governmental purposes, and which is clearly identifiable.

"8. A ship's lifeboat.

"9. Present in this state, for a period of not to exceed 10 days, for the express purpose of competing in a race conducted under a permit from a municipality or an authorized agency of the U.S. government.

"(b) *Exemption from certificate of number requirements.* A boat is exempt from the certificate of number requirements of this chapter if it is a federally documented vessel.

"(c) *Exemption from registration requirements.* A boat is exempt from the registration requirements of this chapter if it is:

"1. Covered by a certificate of number issued under this chapter.

"2. A federally documented vessel which is a commercial fishing boat licensed under s. 29.33.

"3. A federally documented vessel with a home port located outside this state. This exemption does not apply if the boat has been within this state for a period in excess of 60 consecutive days or if this state is the state of principal use of the boat.

"4. Operated within 15 days after an application for registration is made and the required fee is paid if proof of the application for registration is carried on board the boat."

certificate sticker or decal properly attached to and displayed on the boat, and each of the boats operated by the respondents was without a valid state identification number properly displayed on the boat. Each boat did, however, have displayed on its bow a numbered decal evidencing the boat's registration under the provisions of the Band's boat registration ordinance.[2] At the time the citations were issued, the

[2]The Lac du Flambeau Band's boat registration ordinance provides:

"*Section 1: Purpose:* The purpose of this ordinance is to provide a voluntary system under which tribal members may register and obtain identification numbers for boats for use on or off the reservation; in lieu of registering their boats under the state registration system, Wis. Stat. Ch. 30.

"*Section 2: Registration.* Any tribal member who lives or keeps a boat on the Tribe's reservation and who possesses a tribal photo identification card may apply to the Tribal Realty and Natural Resource Department to register a boat and receive a decal or sticker containing a registration number. No fee shall be charged thereafter.

"*Section 3: Registration Number.* The Tribal Realty and Natural Resource Department shall obtain decals or stickers containing the Tribal logo, sequentially and uniquely numbered. The Department shall keep a log of each registration number issued and to whom the registration is issued to. The Department shall verify registration upon request by the Wisconsin Department of Natural Resources.

"*Section 4: Display.* Each member shall place the decal or sticker containing the registration number on the exterior of the boat registered at the bow in such a manner as to be visible when the boat is in use. Failure to display shall invalidate the registration.

"*Section 5: Photo Identification.* If a boat so registered is used off the reservation, the person operating the boat shall maintain in possession, a tribal photo identification card while using the boat.

"*Section 6: Notification of Transfer.* If the owner of a registered boat transfers his or her interest in the boat to another member, the new owner shall notify the Department so that

respondents were exercising tribal treaty rights to fish in the waters of the ceded territories outside the Band's reservation.

On June 30, 1986, the respondents filed a motion to dismiss the citations, in a consolidated proceeding, on the grounds that the state lacked jurisdiction to enforce sec. 30.51(1), Stats., against them, because enforcement would infringe upon their treaty rights and because enforcement would interfere with tribal self-government based on the fact that the Band had enacted its own boat registration ordinance. The trial court, on September 12, 1986, concluded that requiring treaty Indian fishermen to register their boats with the state is an infringement upon the Indians' treaty rights and that enforcement of such boating regulations was, therefore, impermissible.

The court of appeals, in *Big John,* 140 Wis. 2d at 326, affirmed the trial court's dismissal of the citations, but on different grounds than those asserted by the trial court. The court of appeals concluded that enforcement of sec. 30.51(1), Stats., against Band members who had registered under the Band's boat registration ordinance was preempted because en-

registration may be transferred. If the ownership interest is transferred to a non-member, such registration shall be void.

*"Section 7: Prohibited Acts.* It shall be unlawful for a tribal member to:

"a) Deface or alter a tribal boat registration sticker or decal;

"b) Register a boat which is not owned by the member;

"c) Transfer ownership of a registered boat without notifying the Tribe's Realty and Natural Resource Department;

"d) Violate any other provision of this ordinance;

*"Section 8: Penalties.*

"a) Violation of this ordinance shall be punishable by a forfeiture of up to $500.00;

"b) The Lac du Flambeau Tribal Court is hereby given jurisdiction over all matters pertaining to this ordinance."

forcement would infringe upon the Band's right to tribal self-government. The court of appeals utilized the preemption analysis articulated in *Rice v. Rehner*, 463 U.S. 713 (1983), and *State v. Webster*, 114 Wis. 2d 418, 338 N.W.2d 474 (1983), in reaching its conclusion.

When material facts are undisputed, the question presented on appeal is one of law. *State v. Williams*, 104 Wis. 2d 15, 21–22, 310 N.W.2d 601 (1981). Whether statutory provisions apply to a particular set of facts is also a question of law. *Glover v. Marine Bank*, 117 Wis. 2d 684, 691, 345 N.W.2d 449 (1984). An appellate court decides questions of law independently without deference to the lower court's decision. *Id.*

The question before this court is whether application of the *Rice/Webster* preemption analysis is appropriate in a case where the activity the state seeks to regulate occurs outside reservation boundaries. We hold that application of the preemption analysis is not appropriate where the activity the state seeks to regulate occurs outside reservation boundaries.

State jurisdiction over on-reservation activities of tribes is preempted if it interferes or is incompatible with federal and tribal interests reflected in federal law, unless the state interests at stake are sufficient to justify the assertion of state authority. *California v. Cabazon Band of Mission Indians*, 107 S. Ct. 1083, 1092 (1987). The inquiry is to proceed in light of traditional notions of Indian sovereignty and the congressional goal of encouraging tribal self-sufficiency and economic development. *Id.*, citing *New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 334–35 (1983). The United States Supreme Court has rejected the view that states are absolutely barred from exercising jurisdiction over tribal reservations

and members. *Webster,* 114 Wis. 2d at 432, citing *White Mountain Apache Tribe v. Bracker,* 448 U.S. 136, 141 (1980). However, there are two independent but related barriers to the state's exercise of jurisdiction on reservations. First, the exercise of such authority may be preempted by federal law. *White Mountain Apache Tribe,* 448 U.S. at 142; *Rice,* 463 U.S. at 725. Second, state jurisdiction may infringe upon the rights of tribes to establish and maintain tribal government. *White Mountain Apache Tribe,* 448 U.S. at 142; *Rice,* 463 U.S. at 720–25; *Webster,* 114 Wis. 2d at 432. Recent United States Supreme Court cases have revealed a trend away from the idea of inherent Indian sovereignty as an independent bar to state jurisdiction and toward reliance on federal preemption. *Three Affiliated Tribes of the Fort Berthold Reservation v. Wold Engineering, P.C.,* 476 U.S. 877, 884 (1986), citing *Rice,* 463 U.S. at 718. Accordingly, the Court has formulated a comprehensive preemption inquiry which examines not only the congressional plan, but also the nature of the state, federal, and tribal interests at stake, an inquiry designed to determine whether, in the specific context, the exercise of state authority would violate federal law. *Three Affiliated Tribes of the Fort Berthold Reservation,* 476 U.S. at 884, citing *White Mountain Apache Tribe,* 448 U.S. at 145.

On the other hand, the off-reservation activities of Indians are generally subject to the prescriptions of a nondiscriminatory state law, in the absence of an express federal law to the contrary. *Oregon Dept. of Fish & Wildlife v. Klamath Indian Tribe,* 473 U.S. 753, 765 n. 16 (1985); *New Mexico v. Mescalero,* 462 U.S. at 335 n. 18; *Mescalero Apache Tribe v. Jones,* 411 U.S. 145, 148–49 (1973). Examples of "express federal

laws" which may prevent the full application of state regulatory laws to Indians off their reservations include specific treaty rights, such as hunting or fishing rights, which may limit the extent to which state laws regulating those particular activities can be applied to Indians off their reservations. *See Puyallup Tribe v. Dept. of Game,* 391 U.S. 392, 398 (1968); *State v. Gurnoe,* 53 Wis. 2d 390, 410–11, 192 N.W.2d 892 (1972); *State v. Newago,* 134 Wis. 2d 420, 397 N.W.2d 107 (Ct. App. 1986). In such cases, if the challenged state regulation infringes upon treaty rights, the state's jurisdiction to enforce the law is not automatically precluded. However, the burden is on the state to show that the restrictions are "reasonable and necessary" for conservation purposes. *Antoine v. Washington,* 420 U.S. 194, 207 (1975); *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. State of Wisconsin,* 668 F. Supp. 1233, 1235 (W.D. Wis. 1987); *Newago,* 134 Wis. 2d at 425–28.[3]

Therefore, this court must determine, in the context of this case, three questions. The first question is whether enforcement of sec. 30.51(1), Stats., would impermissibly infringe upon the Band's treaty-protected fishing rights. The second question is whether there is any express federal legislation which prohibits the application of sec. 30.51(1) to tribal members

[3]The court of appeals in *Newago* applied the proper analysis in determining whether the challenged state regulation infringed upon treaty-protected rights of the Indians off the reservation. The court held that the burden was on the state to show that the regulation was reasonable, necessary, and nondiscriminatory. *Newago,* 134 Wis. 2d at 425–31. However, the court's utilization in dicta of the *Rice/Webster* preemption analysis where the challenged regulation infringed upon treaty rights off the reservation was inappropriate. *Newago,* 134 Wis. 2d at 431–34.

outside their reservation, and the third question is whether sec. 30.51(1) is nondiscriminatory.[4]

Section 30.51(1), Stats., does not purport to regulate fishing rights. The statute was enacted as part of the state's system for the regulation of boating. *State v. Jackman,* 60 Wis. 2d 700, 703, 211 N.W.2d 480 (1973). The statutory system of numbering and registration of boats is reasonably related to boating safety and is a valid exercise of the state's police power. *Id.* at 703–05. The fact that sec. 30.51(1) has a valid safety purpose is not, however, dispositive. Statutes often have more than one purpose and more than one effect. *See State v. Lemieux,* 110 Wis. 2d 158, 166–67, 327 N.W.2d 669 (1983). Therefore, we must determine whether sec. 30.51(1) actually restricts, hinders, impedes, or prohibits the time, place, or manner of exercise of the Band's treaty-protected fishing rights. It does not. Section 30.51(1) does not limit the number or type of fish that may be taken, nor does it restrict the location or time at which the respondents may fish. "Section 30.51(1) ... does not infringe on ... rights to fish where, when and with what [the respondents] want." *State v. Whitebird,* 110 Wis. 2d 250, 252–53,

---

[4]The respondents note that the State of Wisconsin exempts designated classes of motor vehicles registered by an Indian tribe or band from the registration requirements of this state if: (a) the vehicle carries a registration plate showing a valid registration by the Indian tribe or band; (b) the tribe or band registering the vehicle allows reciprocal privileges to similar classes of vehicles registered in this state under conditions substantially as favorable to this state as to the Indian tribe or band. Section 341.409, Stats. However, precisely because this exemption was statutorily created, it does not serve as authority for the proposition that the respondents should be exempted from the state's boat registration requirements off the reservation.

751

329 N.W.2d 218 (Ct. App. 1982). Consequently, we conclude that enforcement of sec. 30.51(1) against the respondents does not impermissibly infringe upon the Band's treaty-protected fishing rights.

The second question presented is whether there is any express federal legislation which prohibits the application of sec. 30.51(1), Stats., to the tribal members outside their reservation. The State of Wisconsin is the federally approved authority for the issuance of boating certificates of number[5] within the state's territorial jurisdiction. 33 C.F.R. § 173.3(g) and app. A(a) (1987).[6] A state becomes an issuing authority

---

[5]33 C.F.R. § 174.19 (1987) provides, in relevant part, as follows:

"§ 174.19 **Contents of a certificate of number.**

"(a) ... each certificate of number must contain the following information:

"(1) Number issued to the vessel.

"(2) Expiration date of the certificate.

"(3) State of principal use.

"(4) Name of the owner.

"(5) Address of owner, including ZIP code.

"(6) Whether the vessel is used for pleasure, rent or lease, dealer or manufacturer demonstration, commercial passenger carrying, commercial fishing or other commercial use.

"(7) Manufacturer's hull identification number (if any).

"(8) Make of vessel.

"(9) Year vessel was manufactured.

"(10) Overall length of vessel.

"(11) Whether the vessel is an open boat, cabin cruiser, houseboat, or other type.

"(12) Hull material.

"(13) Whether the propulsion is inboard, outboard, inboard-outdrive, or sail.

"(14) Whether the fuel is gasoline, diesel, or other."

[6]" § 173.3 **Definitions.**

"As used in this part:

"...

---

when the Coast Guard verifies that its system conforms to the Coast Guard regulations. 46 U.S.C.A. § 12302(a).[7] The federal statutes and rules establish detailed requirements for a uniform, mandatory national system for the numbering of all motorized boats. *See* 46 U.S.C.A. chs. 123 and 131 and 33 C.F.R. parts 173 and 174. 46 U.S.C.A. § 12301 requires that undocumented motorized vessels be issued an identification number by the proper issuing authority in the state in which the boat is primarily operated. The federal statute and rules prescribe in detail the numbering system to be used by the states and the requirements for display of the number on all motorized boats. 46 U.S.C.A. §§ 12302, 12305. Even the dimensions and the placement of the numbers on a vessel are specified. 33 C.F.R. § 173.27(a)(1)–(5).[8] The

"(g) 'State' means a State of the United States, the Commonwealth of Puerto Rico, the Virgin Islands, Guam, American Samoa, and the District of Columbia."

Appendix A—Issuing Authorities and Reporting Authorities
"(a) The State is the issuing authority and reporting authority in ... Wisconsin ...."

[7] 46 U.S.C.A. § 12302(a) (1988 pamphlet) provides as follows:

"**§ 12302. Standard numbering system.**
"**(a)** The Secretary [of the Department of Transportation, which administers the Coast Guard] shall prescribe by regulation a standard numbering system for vessels to which this chapter applies. On application by a State, the Secretary shall approve a State numbering system that is consistent with the standard numbering system. In carrying out its numbering system, a State shall adopt any definitions of relevant terms prescribed by regulations of the Secretary."

[8] "**§ 173.27 Numbers: Display; size; color.**
"(a) Each number required by § 173.15 must:
"(1) Be painted on or permanently attached to each side of the forward half of the vessel except as allowed by paragraph (b) or required by paragraph (c) of this section;

Lac du Flambeau Band is not listed as a federally approved issuing authority, whereas the State of Wisconsin is so listed. *See* 33 C.F.R. § 173.3(g) and app. A(a). In addition, we have found no express federal law prohibiting the application of sec. 30.51(1) to the respondents outside their reservation, and the respondents have cited none. Therefore, we conclude that there is no express federal legislation which prohibits the application of sec. 30.51(1) to tribal members outside their reservation. Rather, the State of Wisconsin is specifically designated by express federal legislation as the sole issuing authority within the state's territorial jurisdiction. 33 C.F.R. § 173.3(g) and app. A(a).

The respondents maintain, however, that there is no indication in this case that their tribal numbering system fails to comply with the Coast Guard numbering requirements, despite the fact that the Band is not listed as a federally approved issuing authority. Section 30.51(2)(a)3, Stats., provides an exemption from both the certificate of number and the registration requirements of the chapter if a boat is covered by a valid certificate of number issued under federal law or a federally approved numbering system of another state, with the identification number properly displayed on each side of the forward half, but this exemption does not apply if the boat has been within

---

"(2) Be in plain vertical block characters of not less than 3 inches in height;

"(3) Contrast with the color of the background and be distinctly visible and legible;

"(4) Have spaces or hyphens that are equal to the width of a letter other than 'l' or a number other than '1' between the letter and number groupings (Example: DC 5678 EF or DC–5678–EF); and

"(5) Read from left to right."

the state for a period in excess of 60 days or if the state is the state of principal use of the boat. The record contains little evidence on this issue.

The question of which party has the burden of proof on this issue is determined by the application of the five-factor analysis outlined in McCormick, *Handbook of the Law of Evidence,* § 337 at 787–89 (2d ed. 1972), and adopted by this court in *State v. McFarren,* 62 Wis. 2d 492, 499–503, 215 N.W.2d 459 (1974). The five factors to be considered are: (1) the natural tendency to place the burden on the party desiring change; (2) special policy considerations such as those disfavoring certain defenses; (3) convenience; (4) fairness; and (5) the judicial estimate of probabilities. *Id.*

The policy behind the first factor is to assign the burden to the party seeking change in the present state of affairs. *State v. Hanson,* 98 Wis. 2d 80, 90, 295 N.W.2d 209 (Ct. App. 1980), citing *McFarren,* 62 Wis. 2d at 499. This factor favors placing the burden on the respondents because they are attempting to obtain judicial recognition of their registration system as complying with federal requirements when currently the State of Wisconsin is designated as the sole issuing authority within the state's territorial jurisdiction. The second factor is inapplicable, as there is no reason why a defense of statutory exemption should be disfavored. The third factor relates to convenience and access to proof. The requirements of the Band's boat registration system and whether the system complies with federal standards are not facts peculiarly within the respondents' knowledge. However, if proof of this data is easier for any party, it would seem to be easier for the respondents.

The fourth factor has two component parts. One is called "proof of exceptions," and the other is "proof of negatives." "Proof of exceptions" has been defined as providing that one who relies on an exception to a general rule or statute has the burden of proving that the case falls within the exception. *State v. Bleck*, 114 Wis. 2d 454, 461, 338 N.W.2d 492 (1983); *Hanson*, 98 Wis. 2d at 89.

> "In allocating the burdens, courts consistently attempt to distinguish between the constituent elements of a promise or of a statutory command, which must be proved by the party who relies on the contract or statute, and matters of exception, which must be proved by his adversary. Often the result of this approach is an arbitrary allocation of the burdens, as the statutory language may be due to a mere casual choice of form by the draftsman. However, the distinction may be a valid one in some instances, particularly when the exceptions to a statute or promise are numerous. If that is the case, fairness usually requires that the adversary give notice of the particular exception upon which he relies and therefore that he bear the burden of pleading."

McCormick, *supra* p. 755, § 337 at 787–88. The respondents' assertion that their system of registration complies with federal requirements is an exception to the general rule, evidenced in sec. 30.51(1), Stats., that no person may operate any boat on the waters of this state unless covered by a certificate of number issued by the state. Therefore, we conclude that this factor is supportive of a holding that the respondents should bear the burden of proof on this issue. The fifth and final factor favors placing the burden on the party who contends that the more unusual event has

756

occurred. The respondents seek to establish that they are exempt from sec. 30.51(1). Nothing in the briefs or the record indicates how frequently exemptions occur under sec. 30.51(1); therefore, this factor is inapplicable.

The analysis of the above factors leads us to conclude that a party who objects to the state's jurisdiction under sec. 30.51(1), Stats., on the basis that his or her boat fits into one of the exemptions found in sec. 30.51(2) has the burden of persuasion on that fact. We also conclude that the respondents have failed to meet this burden in this case.

The third and final question presented is whether sec. 30.51(1), Stats., is nondiscriminatory. Section 30.51(1) applies equally to Indians and non-Indians utilizing motorboats on the waters of this state outside reservation boundaries. Therefore, we conclude that sec. 30.51(1) is nondiscriminatory. *Whitebird,* 110 Wis. 2d at 251.[9]

In conclusion, we hold that the State of Wisconsin has jurisdiction to enforce sec. 30.51(1), Stats., against tribal members of the Lac du Flambeau Band of the Lake Superior Chippewa Indians who are operating motorboats, registered pursuant to a tribal law, upon the state waters located off the Band's reservation, because sec. 30.51(1) is a nondiscriminatory state law which does not infringe upon the Band's treaty-protected fishing rights and is not contrary to any express

---

[9]*Cf. Moe v. Confederated Salish and Kootenai Tribes,* 425 U.S. 463 (1976). In *Moe,* the Supreme Court described a vehicle registration fee which applied to Indians residing on the reservation as nondiscriminatory. *Moe,* 425 U.S. at 469 n. 9.

federal law. In addition, we hold that the respondents have failed to demonstrate that they meet any of the exemptions found in sec. 30.51(2). Therefore, we reverse the decision of the court of appeals and remand the case to the trial court with instructions to reinstate the citations.

*By the Court.*—The decision of the court of appeals is reversed, and the cause is remanded to the circuit court with instructions.