STATE of Wisconsin EX REL. R.G., Plaintiff-
Respondent,

v.

W.M.B., a/k/a B.B., Defendant-Appellant.†

Court of Appeals

*No. 90-0812. Submitted on briefs November 19, 1990.—Decided
December 11, 1990.*

(Also reported in 465 N.W.2d 221.)

†Petition to review denied.

663

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Elizabeth B. Corbett* and *James L. Beck* of *Wisconsin Judicare, Inc.* of Wausau.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Stephen J. Menard* of *Eberlein & Menard,* corporation counsel for Menominee County.

On behalf of the Menominee Tribe of Wisconsin, the cause was submitted on the Amicus Curiae brief of *Steven C. Moore* and *Patrice Kunesh-Hartman* of *Native American Rights Fund* of Boulder, Colorado.

Before Cane, P.J., LaRocque and Myse, JJ.

CANE, P.J.   W.M.B. appeals a contempt order as well as an amended order directing him to pay support for his minor child. He contends that the underlying state court judgment of paternity against him is void for lack of subject matter jurisdiction because exclusive jurisdiction over paternity and child support actions was vested in the Menominee tribal court. He argues that consequently the Wisconsin courts do not have jurisdiction to order support and entertain the contempt action. Because the Menominee tribal court did not have exclusive jurisdiction over these actions on the date of the original judgment of paternity, we affirm.[1]

The state, on behalf of the child's mother, filed an action in the state court (Menominee County) in July of 1977 to have W.M.B. adjudged the father of her child. The hearing on the matter took place on August 2, 1977 when W.M.B. admitted paternity. The court later entered an order for support. It is undisputed that the mother, father and child are Menominee Indians and resided at all relevant times on the Menominee Reservation.

In 1983, W.M.B. filed a petition in the Menominee tribal court for custody of the child. As a basis for the petition, he presumably cited the state court's judgment adjudicating him as the child's father. The trial court awarded him visitation rights every other weekend.

In February 1990, the state filed in the Wisconsin court an order to show cause with respect to W.M.B.'s failure to comply with the original child support order. The claimed arrearage amounted to approximately

---

[1]We do not address the issue of the Menominee tribal court's jurisdiction to modify the valid child support judgment of the Wisconsin court, as that issue was not briefed by the parties. *See In re Balkus,* 128 Wis. 2d 246, 255 n.5, 381 N.W.2d 593, 598 n.5 (Ct. App. 1985).

$10,000. The state is a party to this action because the mother assigned her interest in the child support arrearage to receive AFDC benefits.

At the hearing on the order to show cause, the father objected to the court's subject matter jurisdiction to decide the issues of child support involving Menominee Indians residing on the Menominee Reservation. The trial court ruled that it had jurisdiction and proceeded to issue the contempt order and the two orders directing the father to pay child support.

■ The father argues that in August of 1977, the tribal court had exclusive jurisdiction over any paternity or child support action between tribal members living on the reservation, and thus the state's adjudication of paternity was a void judgment, and any action to enforce this judgment must therefore be dismissed. Where material facts are undisputed, the question of whether a judgment is void for lack of jurisdiction is a matter of law that we review de novo. *State v. Big John,* 146 Wis. 2d 741, 748, 432 N.W.2d 576, 579 (1988).

A judgment is void if the court rendering it lacked subject matter jurisdiction. *See Wengerd v. Rinehart,* 114 Wis. 2d 575, 578, 338 N.W.2d 861, 864 (Ct. App. 1983). Also, a void judgment is subject to collateral attack. *State v. Madison,* 120 Wis. 2d 150, 158, 353 N.W.2d 835, 839 (Ct. App. 1984).

There are two independent but related barriers to the state's exercise of jurisdiction relating to Indian matters: First, when federal law preempts a state's authority to act; and second, when the state infringes upon the rights of tribes to establish and maintain tribal government. *Big John,* 146 Wis. 2d at 749, 432 N.W.2d at 580. Wisconsin has recognized a trend toward reliance on federal preemption and away from the idea of inherent

666

Indian sovereignty as an independent bar to state jurisdiction. *Id.*

We first address the issue of federal preemption. In *Jackson County v. Swayney,* 352 S.E.2d 413 (N.C. 1987), a North Carolina county child support enforcement agency brought an action for a paternity declaration, collection of past AFDC payments and determination of future child support. The *Swayney* court held that two federal regulations, 25 C.F.R. sec. 11.22[2] and 25 C.F.R. sec. 11.30[3] did not establish federal preemption. *Swayney,* 352 S.E.2d at 416-17. These are the same regulations W.M.B. argues preempt Wisconsin's authority to act on these matters.

As the *Swayney* court observed, the two cited federal regulations are not statutes. Rather, they form part of the enabling legislation of the Court of Indian Offenses. They do not on their face claim exclusive jurisdiction over the areas mentioned. We agree with the court's analysis in *Swayney* that these enabling regulations, standing alone, are not phrased in terms of exclusive tribal court jurisdiction. *Id.* at 416. Accordingly, we

---

[2]Section 11.22 generally defines the jurisdiction of tribal courts, and provides in part: "The Court of Indian Offenses shall have jurisdiction of all suits wherein the defendant is a member of the tribe or tribes within their jurisdiction, and of all other suits between members and nonmembers which are brought before the courts by stipulation of both parties." 25 C.F.R. sec. 11:22 (1986).

[3]Section 11.30 deals with determinations of paternity and support, and provides: "The Court of Indian Offenses shall have jurisdiction of all suits brought to determine the paternity of a child and to obtain a judgment for the support of the child. A judgment of the court establishing the identity of the father of the child shall be conclusive of that fact in all subsequent determinations of inheritance by the Department of the Interior or by the Courts of Indian Offenses." 25 C.F.R. sec. 11.30 (1986).

reject W.M.B.'s contention that 25 C.F.R. secs. 11.22 and 11.30 establish federal preemption of the exercise of subject matter jurisdiction by state courts over paternity and child support actions involving members of Indian tribes.

The second step in our analysis is an examination of whether the exercise of state court jurisdiction over these matters unduly infringes on tribal self-governance. *Id.* at 417 (citing *Williams v. Lee,* 358 U.S. 217, 220 (1959)). Because W.M.B. is making a collateral attack on the underlying paternity judgment, tribal interests at stake in making an adjudication of paternity must be evaluated as of the date of the original action, which was commenced in July of 1977. If the state court had subject matter jurisdiction over this action in 1977, it was empowered to hear and determine the action. *See* sec. 753.03, Stats.

The party claiming that a judgment is void for lack of subject matter jurisdiction has the burden of proving subject matter jurisdiction did not exist. *See Padek v. Thornton,* 3 Wis. 2d 334, 338, 88 N.W.2d 316, 318 (1958) (burden of persons applying for relief from a judgment under the predecessor statute to sec. 806.07, Stats., is to show that they come within the provisions of that statute; one ground for relief is that the judgment is void). Proof of the existence of a specific code, tribal court, or other forum for individuals to resolve their particular dispute is required to bar the application of state law. *In re Jacobs,* 138 Wis. 2d 19, 28–29, 405 N.W.2d 668, 672 (Ct. App. 1987). We examine whether the tribe had a "tradition of self-government" in the particular subject area. *County of Vilas v. Chapman,* 122 Wis. 2d 211, 215, 361 N.W.2d 699, 702 (1985).

Here, the documentary evidence of the existence of any tribal court before which the mother could have sought a paternity determination against the father in August of 1977 is limited to the following: (1) a copy of a proclamation by Wisconsin's governor dated February 19, 1976, retroceding jurisdiction over the Menominee Indian Reservation pursuant to federal law; (2) a copy of a notice dated February 20, 1976 indicating that the Commissioner of Indian Affairs accepted the governor's offer to retrocede jurisdiction; (3) a copy of a notice dated March 1, 1976 authorizing a Court of Indian Offenses to be established on the Menominee Indian Reservation; and (4) a copy of an ordinance adopted by the Menominee Tribal Legislature on August 2, 1979, establishing a tribal judiciary and an interim law and order code. The hearing at which the father admitted paternity was held on August 2, 1977, two years to the day before the tribal legislature adopted an ordinance establishing its tribal court.

The father and the Menominee tribe, as amicus, contend that a Court of Indian Offenses was *in existence* and *operational* prior to the establishment of the Menominee Indian tribal court on August 2, 1979. The record does not support this contention. Instead, it demonstrates only that such a court was *authorized* on March 1, 1976. The record is silent as to the existence of any specific code dealing with issues of paternity and child support that could demonstrate tribal interest in an assertion of jurisdiction during the relevant time period. *See Jacobs,* 138 Wis. 2d at 28–29, 405 N.W.2d at 672.

Also, we note that the tribal court determined questions of custody with respect to the child in 1983. It awarded limited visitation to the father, presumably in reliance on the state court's adjudication of paternity.

669

The record does not show that the tribal court questioned the state's jurisdiction to adjudicate paternity in 1977.

We conclude that there is insufficient evidence in this record to support a claim that the Menominee tribe exercised its sovereign governmental authority in the resolution of paternity and child support issues in 1977. *See Jacobs.* Accordingly, the father's contention that the exercise of state court jurisdiction over these matters in 1977 unduly infringed on tribal self-governance must fail.

The state's exercise of continuing jurisdiction over this action is justified under traditional conflicts of law principles. *See, e.g., Michigan Trust Co. v. Ferry,* 228 U.S. 346 (1913); Restatement (Second) of Conflict of Laws (1971).[4] These principles provide for continuing jurisdiction in all subsequent proceedings that arise out of the original cause of action where the court has initially obtained judicial jurisdiction of the matter and reasonable notice and opportunity to be heard have been afforded. *See Opperman v. Sullivan,* 330 N.W.2d 796 (Iowa 1983) (upholding the continuing jurisdiction of the court in contempt proceedings for failure to comply with child support provisions of original decree).

The state court's 1977 judgment of paternity and order for child support is not void for want of subject

---

[4]Section 26 of the Restatement (Second) of Conflict of Laws provides: "If a state obtains judicial jurisdiction over a party to an action, the jurisdiction continues throughout all subsequent proceedings which arise out of the original cause of action. Reasonable notice and reasonable opportunity to be heard must be given the party at each new step in the proceeding."

matter jurisdiction. The orders of the trial court are therefore affirmed.

*By the Court.*—Orders affirmed.