IN the INTEREST OF ELMER J.K., III, a person Under the Age of 17:

STATE of Wisconsin, Petitioner-Respondent,

v.

ELMER J. K., III, Respondent-Appellant.

Court of Appeals

*No. 98–2067. Oral argument November 16, 1998.—Decided January 12, 1999.*

(Also reported in 591 N.W.2d 176.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of and orally argued by *Eileen A. Hirsch*, assistant state public defender of Madison, and *Cindy W. Haro*, Wisconsin Judicare, Inc., of Wausau.

On behalf of the petitioner-respondent, the cause was submitted on the brief of and orally argued by *Amy R. Greenwood*, assistant district attorney of Shawano.

Before Cane, C.J., Myse, P.J., and Hoover, J.

HOOVER, J. Elmer J.K. III appeals a nonfinal order waiving juvenile court jurisdiction.[1] Elmer claims that the circuit court lacked jurisdiction to grant the waiver because the Menominee Indian Tribe maintained ongoing exclusive jurisdiction over him and the circuit court incorrectly waived him because it failed to rely on proper waiver criteria under § 938.18(5), STATS. We reject Elmer's arguments and affirm the circuit court's order waiving juvenile court jurisdiction.

## I. BACKGROUND

Elmer J.K. is an enrolled member of the Menominee Indian Tribe and previously lived on the Menominee Indian Reservation. On April 17, 1998, the Menominee Tribal Court adjudicated Elmer delinquent. The tribal court ordered that Elmer be placed in Northwest Passage, a secure treatment center in Polk County. The order was pursuant to an agreement between the tribe and the Wisconsin Department of

---

[1] This court granted leave to appeal a nonfinal order on July 22, 1998.

Corrections (the Agreement) under which the department agreed to provide supervision and services to juveniles the tribal court adjudicated delinquent.[2]

On April 20, 1998, Elmer engaged in disorderly conduct and battery to three staff members at Northwest Passage contrary to §§ 947.01, 940.19(1) and 938.12, STATS. A delinquency petition was filed in Menominee-Shawano County Circuit Court. The State filed a petition to waive juvenile court jurisdiction. At the waiver hearing, Elmer brought a motion to dismiss, alleging that the tribe retained jurisdiction over him pursuant to its Agreement with the department. Elmer appeals the circuit court's denial of his motion to dismiss and further contends that the circuit court relied on improper criteria in granting waiver under § 938.18(5), STATS.

## II. ANALYSIS

### A. Jurisdiction

Elmer contends that the circuit court lacked jurisdiction to waive him into adult criminal court. He first asserts that exercising jurisdiction over him infringes on the tribe's right to self-governance. He essentially argues that the tribe, as a sovereign government, has a right to exercise juvenile jurisdiction over its members within its boundaries and may prosecute and impose penalties for offenses using its own tribal police, court and jail. *See, e.g., State v. Webster*, 114 Wis. 2d 418, 434, 338 N.W.2d 474, 482 (1983). He claims that the

---

[2] The tribe is unable to provide secure correctional facilities for juveniles on the reservation. Therefore, it contracted with the department to provide such correctional facilities for juveniles adjudicated delinquent in tribal court for acts committed within reservation boundaries.

tribe does not lose its jurisdiction by entering into an agreement with the State to provide correctional services not available on the reservation.

Our supreme court has held that the State does not have jurisdiction over delinquent acts and crimes Menominee tribal members commit within the tribe's reservation boundaries. *See Webster*, 114 Wis. 2d at 434, 338 N.W.2d at 482. Delinquent acts and crimes committed off the reservation, however, are subject to state jurisdiction. *See Sturdevant v. State*, 76 Wis. 2d 247, 250, 251 N.W.2d 50, 52 (1977); *see also State v. Big John*, 146 Wis. 2d 741, 749, 432 N.W.2d 576, 580 (1988) (off-reservation activities of Native Americans are generally subject to prescriptions of nondiscriminatory state law). *Sturdevant* stressed that:

> This court and the above cited authorities generally have reached the conclusion that a state has jurisdiction to try an Indian for an offense committed outside of the reservation boundaries but within the state, without resort to an interpretation of the various treaties existing between the federal government and the Indian tribe in question. Such a procedure flows from the concept of state sovereignty and resort to treaty interpretation under these circumstances is unnecessary.
>
> . . . .
>
> Since statehood, Wisconsin has exercised as one of the attributes of its sovereignty, civil and criminal jurisdiction over all lands within its boundaries with the exceptions noted in sec. 1.01, Stats.
>
> That civil and criminal jurisdiction, although an inherent attribute of sovereignty is also expressed in constitutional and statutory provisions. Art. VII, sec. 8 of the Wisconsin constitution states:

> "... The circuit courts shall have original juris-
> diction in all matters civil and criminal within this
> state, not excepted in this constitution, and not
> hereafter prohibited by law; ..."

Sec. 252.03, Stats., describes the jurisdiction of
a circuit court in part, as follows:

> "... The circuit courts ... have power to hear
> and determine, within their respective circuits, all
> civil and criminal actions and proceedings unless
> exclusive jurisdiction is given to some other court
> ...."

*Id.* at 252–54, 251 N.W.2d at 53–54.

Moreover, in *In re M.L.S.*, 157 Wis. 2d 26, 458
N.W.2d 541 (Ct. App. 1990), we concluded that the
State had jurisdiction over a Menominee juvenile who
committed delinquent acts off the Menominee reserva-
tion. We emphasized that, the "juvenile code applies to
conduct committed in the state by any resident juvenile
and is therefore nondiscriminatory. Because M.L.S.'s
offenses occurred off-reservation and the applicable
statutes are nondiscriminatory, the state has subject
matter jurisdiction." *Id.* at 28, 458 N.W.2d at 542.
Here, under *Sturdevant* and *M.L.S.*, although the
Menominee tribe has continuing jurisdiction over
Elmer for delinquent acts committed within reserva-
tion boundaries, it does not have continuing
jurisdiction over new delinquent acts committed off the
reservation.

Elmer further argues that, although under *M.L.S.*
the State has jurisdiction over delinquent acts commit-
ted off-reservation, the Agreement, by its plain terms,
recognizes the tribal court's ongoing jurisdiction over
juveniles placed in facilities outside reservation bound-

379

aries.[3] Whether the agreement gives the tribal court continuing jurisdiction over Native American juveniles for new delinquent acts committed off-reservation requires us to engage in contract interpretation. Construction of a contract is a question of law we review de novo. *Gunka v. Consolidated Papers*, 179 Wis. 2d 525, 531, 508 N.W.2d 426, 428 (Ct. App. 1993). The object of contract construction is to determine the contracting parties' intent, and we begin by looking to the language the parties used to express their agreement. *Bank of Barron v. Gieseke*, 169 Wis. 2d 437, 455, 485 N.W.2d 426, 432 (Ct. App. 1992). When the contract's language is plain and unambiguous, we construe it as it stands. *Id.*

The Agreement provides in pertinent part that, "the [tribal] Court retains jurisdiction and legal custody of all Indian persons affected by the Court's orders and no placement by the Court pursuant to this agreement shall act to relinquish said jurisdiction and legal custody . . . ." This language is ambiguous. It may, by virtue of the words, "jurisdiction" and "legal custody," support Elmer's construction. Conversely, it may mean, as the State contends, that the tribal court retains jurisdiction over the juvenile under the dispositional order arising from the delinquent act committed within the reservation. We accept the State's interpretation.

Elmer's contention that the Agreement extends tribal juvenile court jurisdiction to new off-reservation delinquent acts works an untenable result. It would be

[3] The Agreement, according to Elmer, creates the enforceable fiction that, for purposes of jurisdiction, it is as though the detention facility was located within the reservation boundaries.

unreasonable to conclude that the legislature, by permitting the DOC to enter into service contracts with tribes, intended to relinquish state jurisdiction over one who commits a "crime" within its sovereignty.[4] Additionally, the parties could not have intended to give juveniles potential immunity for acts committed while under the supervision of the department. The law provides the tribal courts with jurisdiction only over tribal members who commit criminal or delinquent acts within the reservation's physical boundaries.[5] Under Elmer's interpretation, neither the tribe nor the State would have jurisdiction to prosecute him for his acts. The tribe would not have jurisdiction because his acts occurred off the reservation. The State would not have jurisdiction as a result of the Agree-

---

[4] Indeed, there is a substantial, but unbriefed, question whether the secretary of the DOC has the authority to unilaterally cede such a significant aspect of governmental sovereignty as jurisdiction to proceed against those who allegedly committed delinquent acts. While we raise the concern, we do not resolve it. Appellate courts ordinarily will not consider or decide issues which are not specifically raised on appeal. *Waushara County v. Graf,* 166 Wis. 2d 442, 451, 480 N.W.2d 16, 19 (1992).

[5] At oral arguments Elmer's counsel indicated that the Menominee Tribe has enacted a juvenile code substantially similar to ch. 938, STATS., thereby providing its juvenile court with jurisdiction extending beyond the reservation to where, for example, the juvenile is present or where the act was committed. *Cf.* § 938.185, STATS., a venue, and not jurisdictional provision. The tribal law counterpart to § 938.185 was not briefed, is not before this court and might *arguably* conflict with the cases cited above. Again, we ordinarily will not consider issues not specifically raised on appeal. *See* note 4. In any event this court's first reason for rejecting Elmer's construction is dispositive.

ment. We decline to adopt such an unreasonable construction.

Finally, Elmer maintains that the tribal court order is entitled to full faith and credit or comity under art. IV, § I, of the United States Constitution. Prosecution by the State for a new delinquent act, however, does not undermine or interfere with the tribal court's previous order. Accordingly, we conclude that the State has jurisdiction over Elmer's subsequent delinquent acts committed off-reservation while at the Northwest Passage pursuant to a placement Agreement between the department and the tribe.

## B. Waiver Criteria

We next address Elmer's argument that the circuit court applied the incorrect criteria when it waived Elmer into adult criminal court. Section 938.18(5), STATS., provides that the circuit court must consider the following criteria in making a waiver determination:

> (a) The personality and prior record of the juvenile, including whether the juvenile is mentally ill or developmentally disabled . . . .
> (b) The type and seriousness of the offense, including whether it was against persons or property, the extent to which it was committed in a violent, aggressive, premeditated or wilful manner, and its prosecutive merit.
> (c) The adequacy and suitability of facilities, services and procedures available for treatment of the juvenile and protection of the public within the juvenile justice system . . . .
> (d) The desirability of trial and disposition of the entire offense in one court if the juvenile was

382

allegedly associated in the offense with persons who will be charged with a crime in circuit court.[6]

Elmer claims that the circuit court: (1) did not consider the adequacy and suitability of facilities available for treatment; (2) did not consider the type and seriousness of the offense; (3) relied upon inaccurate information regarding his prior record; and (4) had no reasonable basis to conclude that juvenile correctional institutions were not available and suitable for him.[7] The record belies these contentions.

****

Waiver of juvenile jurisdiction under § 938.18, STATS., is within the sound discretion of the circuit court. *See In re B.B.*, 166 Wis. 2d 202, 207, 479 N.W.2d 205, 206–07 (Ct. App. 1991). We review the circuit court's decision for misuse of discretion. *Id.* at 207, 479 N.W.2d at 207. We first look to the record to see whether discretion was in fact exercised. *In re J.A.L.*, 162 Wis. 2d 940, 961, 471 N.W.2d 493, 501 (1991). If discretion was exercised, we will look for any reason to sustain the court's discretionary decision. *Id.* We will "reverse a juvenile court's waiver determination if and only if the record does not reflect a reasonable basis for the determination or a statement of the relevant facts or reasons motivating the determination is not carefully delineated in the record." *Id.*

---

[6] Only factors in subsecs. (a)–(c) are relevant to our analysis because subsec. (d) only applies when the juvenile has committed an offense with a person who will be charged in adult criminal court.

[7] The essence of his argument is that the expert's opinions were, for various reasons, patently incredible; it would be unreasonable as a matter of law to rely on these opinions.

The paramount consideration in determining waiver is the best interests of the child. *In re C.W.*, 142 Wis. 2d 763, 767, 419 N.W.2d 327, 328–29 (Ct. App. 1987). It is within the circuit court's discretion how much weight should be afforded each of the factors under § 938.18(5), STATS. *In re G.B.K.*, 126 Wis. 2d 253, 259, 376 N.W.2d 385, 389 (Ct. App. 1985). The circuit court must state its finding with respect to the criteria on the record. *In re J.A.L.*, 162 Wis. 2d at 960, 471 N.W.2d at 501. If the circuit court determines by clear and convincing evidence that it would be contrary to the best interests of the child or the public for the juvenile court to hear the case, it must enter an order that waives jurisdiction and refers the matter to the district attorney for appropriate proceedings in criminal court. *Id.*

Here, the circuit court made findings regarding the applicable criteria under § 938.18(5), STATS., and enumerated those findings on the record. First, it considered Elmer's personality and his prior record. The court stressed that Elmer's "motives and patterns of living . . . obviously challenge[ ] authority [and are] sort of an adult-type thing." The court reflected on Elmer's past criminal history and determined that he was an insensitive and dangerous person. The court commented that he is "capable of committing serious crimes here. . . . He has a lengthy record including hitting a child with a pipe. That really is disturbing. If there's one thing that is consistent in criminal behavior it's that criminals are totally insensitive to hurting other people."

Elmer contends that the court relied on inaccurate information in regard to his prior criminal record. He maintains that "the court apparently relied upon

[Scott] Anderson's erroneous testimony[8] regarding Elmer K.'s prior record, saying: 'He has a lengthy record . . . .' " The circuit court does not, however, delineate what testimony it relied on in making that statement. Even if Elmer "only" had four adjudications, as he claims, the court may have reasonably considered that "lengthy" considering Elmer was only fifteen years old.

Further, contrary to Elmer's argument, the record reflects that the court considered the type and seriousness of Elmer's present offense. The court stated in its decision that Elmer has continually engaged in a pattern of challenging authority as shown by challenging the staff at Northwest Passage. The court further stressed that Elmer's challenging behavior, including his behavior at Northwest Passage, appeared to be physical in nature.

The record reveals the court considered the third criteria when it concluded that "the testimony was very clear that there is nothing further in the juvenile system." This decision was based on the testimony of two social workers regarding the adequacy and suitability of facilities available for treatment in the juvenile system. Scott Witbro, Elmer's previous case manager, testified that there was nothing left in the juvenile system for Elmer: "Recently I've taken kind of a strong stance against Lincoln Hills . . . and I couldn't recommend at this time Elmer or really any juvenile going to Lincoln Hills . . . . . . . Northwest Passage was one of the places that I used as a last resort kind of place where a juvenile could really benefit. . . . with the lack of options left in juvenile court, I don't think there is any alternative but waiver at this time." Anderson, a social worker

---

[8] Anderson testified that he believed that Elmer had nine adjudications in tribal court.

with the juvenile unit for Menominee Health and Human Services, also testified that there were no juvenile options left for Elmer, "I believe the only option left is to waive Elmer. . . . His behavior has become increasingly violent to the point where I would call almost out of control. . . . My experience in what I know of Lincoln Hills, it's not a rehabilitative place to be." Although Elmer asserts that Anderson conceded that Lincoln Hills could still be an option, the weight and credibility of this testimony is not for the appellate court to evaluate, but for the fact-finder. *See State v. Poellinger*, 153 Wis. 2d 493, 506, 451 N.W.2d 752, 757 (1990). The trier of fact could either accept or reject the State's witnesses' testimony in whole or in part.

Accordingly, based on the evidence and the applicable law, the circuit court considered and applied the criteria under § 938.18(5), STATS., and reasonably concluded on the record that it is established by clear and convincing evidence that waiver would be in the best interests of the juvenile and the public. Thus, we conclude that the circuit court did not erroneously exercise its discretion by waiving Elmer to adult criminal court.

*By the Court.*—Order affirmed.