# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-4288

_____

United States of America,                   *
                                             *
          Appellee,                          *
                                             *
     v.                                      *
                                             *
David Jon Gotchnik,                          *
                                             *
          Appellant.                         *

_____

No. 99-4289

_____

Appeals from the United States
District Court for the
District of Minnesota.

United States of America,                    *
                                             *
          Appellee,                          *
                                             *
     v.                                      *
                                             *
Mark Francis Stepec,                         *
                                             *
          Appellant.                         *

_____

No. 99-4290

_____

United States of America,                    *
                                             *
          Appellee,                          *

                              *
        v.                    *
                              *
Terry Lee Anderson,          *
                              *
                              *
          Appellant.          *
      _____

          No. 99-4292
      _____

United States of America,    *
                              *
          Appellee,           *
                              *
        v.                    *
                              *
Thomas Jay Anderson,         *
                              *
          Appellant.          *
      _____

          No. 99-4293
      _____

United States of America,    *
                              *
          Appellee,           *
                              *
        v.                    *
                              *
David Jon Gotchnik,          *
                              *
          Appellant.          *

_____

Submitted:  May 11, 2000

Filed:   August 21, 2000
_____

Before WOLLMAN, Chief Judge, FAGG, Circuit Judge, and HENDREN,[1] District
Judge.

_____

WOLLMAN, Chief Judge.

In this consolidated appeal, David Jon Gotchnik, Mark Francis Stepec, Terry Lee
Anderson, and Thomas Jay Anderson (appellants) appeal from their convictions in
district court[2] for using motorboats and motor vehicles in a wilderness area in violation
of 36 C.F.R. § 261.16(a).  We affirm.

## I.

Appellants are members of the Bois Forte Band of Chippewa Indians, a
federally-recognized tribe that was a signatory to the Treaty with the Chippewa of
September 30, 1854 (the Treaty), 10 Stat. 1109.  Under the terms of the Treaty, the
Bois Forte and other Chippewa Bands (collectively, the Bands) ceded to the United
States a large tract of land located in northern Minnesota, a portion of which has
become the Boundary Waters Canoe Area Wilderness of the Superior National Forest
(Boundary Waters Area).  In return, the signatory Bands retained usufructuary rights

---

[1]The Honorable Jimm Larry Hendren, Chief Judge, United States District Court
for the Western District of Arkansas, sitting by designation.

[2]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota.

-3-

in the ceded lands pursuant to Article 11 of the Treaty, which provides that "such of [the Chippewa Indians] as reside in the territory hereby ceded, shall have the right to hunt and fish therein, until otherwise ordered by the President."[3]  The Bands have continued to hunt and fish throughout the ceded territory since the adoption of the Treaty, and in 1988 were granted formal authority to regulate their members' use of the ceded lands for these purposes.  See Grand Portage Band of Chippewa of Lake Superior v. Minnesota, Civ. No. 4-85-90 (D. Minn. 1988) (approving consent decree requiring Bands to regulate hunting and fishing in ceded territory).

At various times in 1998 and 1999, each appellant was cited for violating 36 C.F.R. § 261.16(a).  Section 261.16(a), which is made applicable to the Boundary Waters Area by the Boundary Waters Canoe Area Wilderness Act of 1978 (Boundary Waters Act), Pub. L. No. 95-495, § 4, 92 Stat. 1649, 1651, prohibits the possession or use of a "motor vehicle, motorboat, or motorized equipment" in a national forest wilderness area "except as authorized by federal law."  In each instance, an appellant operated a motor vehicle or motorboat in an off-reservation "no-motor" zone of Basswood Lake in order to reach an off-reservation fishing location within the Boundary Waters Area.  Appellants Gotchnik, Terry Anderson, and Thomas Anderson used boats equipped with outboard motors.  Appellant Stepec, who traversed Basswood Lake's frozen waters, used an all-terrain vehicle.  In addition, Stepec was cited for possessing a motorized ice augur.

Gotchnik and Stepec moved the district court for a judgment of acquittal, contending that their actions were within the scope of their rights under the Treaty and thus that section 261.16 does not apply to them.  The court denied the motion as it

_____

[3]Usufructuary rights include the right to "live off the land," or to make a modest living by hunting and gathering from the resources of the land.  See United States v. Bresette, 761 F. Supp. 658, 660 (D. Minn. 1991).  Article 11 of the Treaty has been construed to provide the Bands with full usufructuary rights in the ceded territory.  See id. at 661.

pertained to Gotchnik's and Stepec's use of motorized means of transportation, reasoning that the original parties to the Treaty would not have understood it to include the use of modern transportation methods to access off-reservation hunting and fishing areas and, alternatively, that the Boundary Waters Act's restriction on motor vehicles is a permissible conservation measure. As for Stepec's possession of an ice auger, however, the district court granted the motion. The court cited cases upholding the use of modern hunting and fishing implements under the Treaty and further found that there was no sufficient conservation interest to prohibit the use of an ice augur. Gotchnik and Stepec appealed the court's partial denial of their motion, and their appeal was consolidated with the appeals of Terry and Thomas Anderson.

## II.

### A.

As a preliminary matter, we note, and the government concedes, that Congress has not abrogated the Bands' Treaty right to hunt and fish in the ceded territory located within the Boundary Waters Area. Although Indian treaties are treated like federal statutes and can be abrogated or modified by Congress, Congress must clearly express its intent to do so. See Washington v. Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. 658, 690 (1979). Thus, an act of Congress abrogates or modifies a specific treaty right only when there "is clear evidence that Congress actually considered the conflict between its intended action on the one hand and the Indian treaty rights on the other, and chose to resolve that conflict by abrogating the treaty." United States v. Dion, 476 U.S. 734, 739-40 (1986).

Here, the Boundary Waters Act does not purport to abrogate or modify the Treaty. To the contrary, section 17 of the Act expressly provides that "[n]othing in this Act shall affect the provisions of any treaty now applicable to lands and waters which are included in the mining protection and the wilderness." Furthermore, the legislative

history of the Boundary Waters Act belies any intent by Congress to abrogate the Bands' rights under the Treaty. See Rep. of House Comm. on Interior and Insular Aff. (Rpt. No. 95-1117, Part I) (1978) ("Section 17 makes clear that the legislation is not to affect the provisions of any treaty which is now in effect. The Boundary Waters are affected by . . . certain Indian treaties. All these existing agreements are to remain unaffected by the enactment of this legislation.").

Appellants thus clearly possess the right to hunt and fish in the ceded territory encompassed within the Boundary Waters Area. The question, then, is whether the Boundary Water Act's prohibition of the use of motorboats and motor vehicles in this area, and the government's prosecution of appellants under this prohibition, offends appellants' rights under the Treaty.

## B.

Our interpretation of the Treaty, like all Indian treaties, is guided by special rules of construction. See Washington State Commercial Passenger Fishing Vessel Ass'n, 443 U.S. at 675-76. We must give effect to the terms of the Treaty as the Indian signatories themselves would have understood them. See Minnesota v. Mille Lacs Band of Chippewa Indians, 119 S. Ct. 1187, 1201 (1999); Jones v. Meehan, 175 U.S. 1, 11 (1899). We must also liberally construe any ambiguous term in favor of tribal interests. See Mille Lacs Band of Chippewa Indians, 119 S. Ct. at 1205; Alaska Pacific Fisheries v. United States, 248 U.S. 78, 89 (1918). When a term is unambiguous when reasonably interpreted, however, we may not ignore this interpretation even if it is against Indian interests. See United States v. Choctaw Nation, 179 U.S. 494, 535 (1900).

Appellants argue that the Treaty, by securing their right to hunt and fish, also secures their right to use modern transportation methods to move about the ceded territory whenever they are exercising their hunting and fishing rights. First, they

contend that the signatory Bands understood their hunting and fishing rights to encompass the use of evolving transportation methods and not to be limited to then-existing methods. To support their position, appellants cite cases involving treaties with similar usufructuary right provisions in which courts held that tribal members were not confined to the use of hunting and fishing implements that existed at the time of the Treaty signing. See Mille Lacs Band of Chippewa Indians v. Minnesota, 861 F. Supp. 784, 838 (D. Minn. 1994), Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Wisconsin, 653 F. Supp. 1420, 1430 (W.D. Wis. 1987). The government, in response, concedes that the Treaty protects appellants' right to use modern hunting and fishing techniques, but asserts that it does not similarly authorize the use of modern means of transportation to reach the most desirable hunting and fishing locations.

We agree with the government that there is a consequential distinction between appellants' use of evolving hunting and fishing implements and their use of modern means of transportation. The Treaty secures appellants' right to subsistence hunt and fish in the ceded territory. The use of modern gaming instruments and techniques goes to the very essence of these protected activities, whereas the use of the most advanced means of transportation to reach desired hunting and fishing areas is merely peripheral to them. A motorboat, all-terrain vehicle, or helicopter for that matter, may make it easier to reach a preferred fishing or hunting spot within the Boundary Waters Area, but the use of such motorized conveyances is not part and parcel of the protected act of hunting or fishing, as is the use of a rifle, ice augur, or other hunting or fishing instrument.

That hunting and fishing are distinct from preparatory travel is evidenced by the provisions of the Boundary Waters Act. Congress included within this Act both section 17, which provides that nothing in the Act shall affect existing treaties, and section 4, which sets forth extensive limitations on the use of motorized transportation within the Boundary Waters Area. The juxtaposition of these two provisions indicates that Congress did not consider motor vehicle use to be part of the Bands' right to hunt and

fish.  Cf. United States v. Gullickson, 981 F.2d 344, 349 (8th Cir. 1992) ("When general and specific statutory provisions apparently contradict, it is well-established that the two may exist together, the specific provision qualifying or limiting the general." (citation omitted)).  Of course, Congress's understanding of the Treaty cannot be substituted for that of the signatory Bands, but we believe that Congress's understanding represents a reasonable and unambiguous interpretation of the Treaty and the Bands have presented no evidence, historical or otherwise, to suggest that the signatories adhered to a different understanding.  See Choctaw Nation, 179 U.S. at 535.

Thus, we conclude that although the use of evolving hunting and fishing implements may have been within the understanding of the signatory Bands, the same cannot reasonably be said of the use of modern modes of transportation to reach desired hunting and fishing areas.

Appellants also contend that, even if the signatory Bands did not contemplate the use of modern transportation methods to access hunting and fishing areas, appellants must be accorded such a right in order to effectuate their undisputed right to hunt and fish.  As support for their argument, appellants rely on United States v. Winans, 198 U.S. 371 (1905), and Grand Traverse Band of Ottawa and Chippewa Indians v. Director, Michigan Dep't of Natural Resources, 141 F.3d 634 (6th Cir. 1998), in which the Supreme Court and the Sixth Circuit, respectively, held that treaty fishing rights included an "easement of access" to treaty fishing areas.

We find that the facts that necessitated a right of access in Winans and Grand Traverse are not present in this case and therefore that appellants are not entitled to the "access" to hunting and fishing areas that motorboats and motor vehicles can provide. In Winans, Yakima Indians sought to obtain access to fishing areas in which they possessed treaty fishing rights but from which they had been barred by private individuals who had come to own the land fronting these areas.  Finding that the Yakima had no other reasonable way to access these areas, the Supreme Court granted

the desired access because "[n]o other conclusion would give effect to the treaty." Winans, 198 U.S. at 381. In Grand Traverse, tribal members similarly sued to obtain access to two of the eight fishing areas in which they possessed the treaty right to engage in commercial fishing. Tribal members were unable to access these areas because small boats could not safely reach them and because the municipalities that owned marinas capable of mooring larger vessels were prohibited by state law from using the marinas for commercial use. The Sixth Circuit granted the tribe the right to moor their commercial ships on the municipal marinas, reasoning that the tribe's fishing rights included the right to access the designated fishing waters and that without use of the marinas their fishing right would be "destroy[ed]." See Grand Traverse Band, 141 F.3d at 640.

Both Winans and Grand Traverse thus involved an impediment that arose after the treaties were signed and which effectively barred tribal members from exercising their treaty fishing rights. Neither condition is present here. First, appellants have precisely the same access to all parts of the Boundary Waters Area that the Bands had at the time the treaty was signed. There has been no intervening sale of adjoining lands to obstructive private parties, see Winans, 198 U.S. at 380, nor has the state subsequently prohibited tribal members from using adjoining lands to access protected hunting or fishing areas, see Grand Traverse, 141 F.3d at 637 n.2, 638. The prohibition that does exist--a restriction on the use of motorboats and motor vehicles--limits only appellants' use of modern forms of transportation, and such conduct, as we have already found, was not within the signatories' understanding of the Treaty.

Second, the Boundary Water Act's prohibition on the use of motorboats and motor vehicles does not effectively preclude appellants from exercising their hunting and fishing rights, as did the impediments in Winans and Grand Traverse.[4] Indeed,

_____

[4]Appellants argue that the tribal members in Grand Traverse were not, in fact, effectively denied access to their fishing areas, but rather that the state's prohibition of

thousands of non-Band members fish in the Boundary Waters Area in compliance with this restriction each year, and although appellants possess the right to fish for subsistence and not merely for sport, they have failed to show how their subsistence fishing is any more burdened by this prohibition than is non-Band members' recreational fishing. To be sure, the prohibition on motorboat and motor vehicle use may make it somewhat less convenient for appellants to reach the most remote regions of the Boundary Waters Area, but we do not think this inconvenience impermissibly infringes upon their Treaty rights. See Wisconsin v. Big John, 432 N.W.2d 576, 581 (Wisc. 1988) (finding that boat registration requirement, although a burden, does not improperly impinge upon tribe's treaty fishing rights).

In sum, we conclude that the Boundary Water Act's prohibition of the use of motorboats and motor vehicles in the Boundary Waters Area does not offend appellants' rights under the Treaty. Having so found, we need not consider whether the Boundary Waters Act and section 261.16 constitute conservation measures sufficiently important to abridge appellants' Treaty rights.

The judgments are affirmed.

---

the tribe's use of the municipal marinas merely made it less convenient for them to exercise their rights, just as appellants' access to portions of the Boundary Waters Area has been made less convenient. As a basis for this argument, appellants point to a footnote in which the Grand Traverse court noted that the tribe could have reached the fishing areas at issue from a marina that, by round trip, was five to ten hours away. See Grand Traverse Band, 141 F.3d at 640 n.10. We disagree that a mere inconvenience was at issue in Grand Traverse. The court's footnote merely reinforced its conclusion that no other marina was available from which the tribe could feasibly exercise its treaty rights. See id. at 640 ("[T]here simply is no material dispute of fact that [tribal] fishers reasonably require the ability to occasionally moor their vessels at [the municipal marinas]." (citation omitted)). Moreover, the court unequivocally stated that denying the tribe access to the municipal marinas would "destroy [their] rights to commercially fish." Id.

-10-

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.