**LAC COURTE OREILLES BAND OF LAKE SUPERIOR CHIPPEWA INDIANS, et al., Plaintiffs-Appellees,**

v.

**STATE OF WISCONSIN, et al., Defendants-Appellants.**

No. 84–1552.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 11, 1985.

Decided April 24, 1985.

178

Kathryn L. Tierney, Lake DueFlaumbeau, Wis., for plaintiffs-appellees.

Maureen McGlynn, Wis. Dept. of Justice, Madison, Wis., for defendants-appellants.

Before CUMMINGS, Chief Judge, CUDAHY, Circuit Judge, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

This is an interlocutory appeal from an order of the district court following a remand in which the District Judge was instructed to enter judgment for the plaintiffs and to give further consideration to the permissible scope of State regulation over the rights found to be possessed by the plaintiffs.

The underlying controversy resulting in the litigation was the claim of the Lac Courte Oreilles Band of Lake Superior Chippewa Indians that they retained treaty-reserved hunting, fishing, trapping and gathering wild rice and maple sap on non-reservation lands (usufructuary) rights in ceded lands in the northern third of Wisconsin and that the exercise of such rights could not be regulated by the State. Since the filing of the original suit other bands of Lake Superior Chippewa Indians have intervened by stipulation as plaintiffs, but for convenience of reference the plaintiffs will be referred to as LCO. The defendants include the State of Wisconsin, its Natural Resources Board, and various State officials sued both in their individual and official capacities who will be designated as the State.

The threshold question prior to the first appeal in this case and that with which this Court was basically and primarily concerned on appeal, was not with defining the scope and extent of such rights but whether they continued to exist subsequent to the Presidential Removal Order of 1850 or the Treaty of 1854. The district court in a carefully thorough analysis of the somewhat meager historical information available, the meagerness being in a large extent attributable to the time and place of various treaty conferences there being no 20th century reporting process, granted summary judgment, finding that the President's Removal Order of 1850 was not authorized by previous treaties, was beyond the scope of the President's powers and was without legal effect but that the 1854 treaty terminated the Chippewa's rights of permissive occupation in territory ceded in 1837 and 1842 and not included in the reservation contemplated by the 1854 treaty. The ultimate holding was that the Chippewa Indians did not have the right to exercise their claimed usufructuary rights without State regulation or control in the non-reservation areas ceded by the Indians in the 1837 and 1842 treaties. *United States v. Bouchard,* 464 F.Supp. 1316 (W.D.Wis. 1978).

Upon appeal by both parties, this Court, however, did not agree with Judge Doyle on the second prong of his decision but held that the LCO rights established by the 1837 and 1842 treaties were neither terminated nor released by the 1854 treaty. *Lac Courte Oreilles Band v. Voigt,* 700 F.2d 341 (7th Cir.1983) (*LCO I*). This Court, although disagreeing with the district court, did as it did and concentrated its attention on the historical aspects of the

national governmental action and examined the various treaties as the Indians would have understood them as disclosed by the practices and customs of the Indians at the time the treaties were negotiated.

The matter which has precipitated the present appeal is contained in less than one page, being the final page, of this Court's opinion, 700 F.2d at 365. In the original slip opinion the next to the final paragraph read as follows:

> Having considered all the arguments urged by the parties, the district court's summary judgment in favor of the defendants as to the continued existence of the LCO's usufructuary rights is reversed. The case is remanded to the district court with instructions to enter judgment for the LCO band on that aspect of the case and for further consideration as to the permissible scope of State regulation over the LCO's exercise of their usufructuary rights.

Subsequent to the filing of this Court's opinion, the State filed a petition for rehearing and suggestion of rehearing en banc, which included a request for clarification as to the existence of the ability to exercise usufructuary rights on private lands. It was averred that the exercise of such rights on land which had been patented to private persons would constitute an encumbrance on title to such property and that it was not the intent of the United States to convey, nor the purchasers to acquire, less than full and clear title. In its order denying rehearing the Court amended the slip opinion by adding a sentence in the next to the last paragraph of the opinion and a footnote pertinent thereto, the two reading as follows:

> Having considered all the arguments urged by the parties, the district court's summary judgment in favor of the defendants as to the continued existence of the LCO's usufructuary rights is reversed. *The exercise of these rights is limited to those portions of the ceded lands that are not privately owned.*[14] The case is remanded to the district judge with instructions to enter judg-

ment for the LCO band on that aspect of the case and for further consideration as to the permissible scope of State regulation over the LCO's exercise of their usufructuary rights.

[14] This court has understood the LCO band's argument to be limited to those portions of the ceded lands that have not passed into private ownership. To the extent that the LCO band might be claiming a broader right—such as the right to engage in usufructuary activities on land that is privately owned but utilized for sport hunting and fishing—we find that the claim is inconsistent with the Indians' understanding at the time of the cession treaties that their rights could be limited if the land were needed for white settlement, *see* Section I, *supra.*

[The added sentence in the text is italicized.]

Following remand, Judge Doyle directed the parties to submit to the court proposed judgments complying with this Court's directive. Both parties submitted proposed judgments. The district court thereafter entered its order, denominated "Partial Judgment" reading in part as follows:

> 1. The Lac Courte Oreilles Band of Lake Superior Chippewa Indians reserved for its members usufructuary rights within the territory ceded by the Lake Superior Chippewa to the United States in the Treaty of 1837, 7 Stat. 536, and in the Treaty of 1842, 7 Stat. 591.
>
> 2. The usufructuary rights so reserved were not extinguished or relinquished by the 1850 Executive Order of the President of the United States or by the Treaty of 1854, 10 Stat. 1109.
>
> 3. The usufructuary rights so reserved continue to exist, limited to those portions of the ceded lands that were not privately owned as of March 8, 1983.
>
> 4. This court retains jurisdiction further to define the usufructuary rights so reserved and to determine the extent to which the State of Wisconsin may regulate them.

This appeal is directed solely to the third paragraph of the order and on appeal the respective parties each rely on the law of the case doctrine as supporting their respective positions: the LCO in supporting

the decision of the district court and the State asserting several ways in which it regards paragraph 3 as incorrect.

Before addressing the merits of the appeal, however, it is necessary to determine whether this Court has jurisdiction over the appeal.

We begin our jurisdictional inquiry with a reference to 28 U.S.C. § 1291 (1984 Supp.) which limits the appellate jurisdiction of the several United States Courts of Appeals to the review of *final decisions* of the district courts. (*Emphasis added.*) *See Shearson Loeb Rhodes, Inc. v. Much,* 754 F.2d 773, 775 (7th Cir.1985). Rule 54(b) of the Federal Rules of Civil Procedure, however, creates an exception to the "final judgment" rule by authorizing the district courts to certify for immediate appellate review orders disposing of fewer than all of the claims presented in an action or orders adjudicating the rights of fewer than all of the parties involved. FED.R.CIV. P. 54(b). *See* 9 J. MOORE, B. WARD & J. LUCAS, MOORE'S FEDERAL PRACTICE ¶ 110.06 (2d ed. 1983). In order to secure review under Rule 54(b), the district court must expressly determine that there is no just reason to delay appeal and must expressly direct the entry of judgment. FED.R.CIV.P. 54(b).

■ In this case, the district court entered an order on March 6, 1984, which limited the usufructuary rights of the Lac Courte Oreilles Indians to those portions of the ceded territories that were not privately owned as of March 8th, 1983. This order did not dispose of all of the claims presented to the district court. Rather, the order left for the court's consideration the determination of the permissible scope of the State's regulatory power over the Indians' usufructuary rights and the further definition of the nature of the usufructuary rights themselves. In effect, the court's order merely established on which lands the Indians' usufructuary rights existed. The order was thus a partial and not a final judgment in the case, and remained unappealable absent the district court's certification of the order pursuant to Rule 54(b).

The State filed a notice of appeal from the district court's order in this Court on April 3, 1984. At that time, the district court had not certified the order for immediate appeal. This Court therefore ordered the State to show cause why the appeal should not be dismissed for lack of a Rule 54(b) certification. In response to this Court's show cause order, the State filed a memorandum opposing dismissal of the appeal in which the State alleged that it had requested a Rule 54(b) certification from the district court and that it expected to receive the certification shortly. The district court in fact granted the State's request for certification in an order dated October 29, 1984, some seven months after its entry of partial judgment. The district court observed in certifying the partial judgment that the Lac Courte Oreilles Indians did not oppose the State's request for certification.

■ The State, accordingly, prematurely appealed from a nonfinal order of the district court, but obtained a Rule 54(b) certification rendering the order final and appealable prior to this Court's consideration of its appeal. *See Tilden Financial Corp. v. Palo Tire Service, Inc.,* 596 F.2d 604, 607 (3d Cir.1979). This Court has held, in analogous circumstances, that such premature appeals, followed by belated certification by the district court, are sufficient to invest this Court with appellate jurisdiction. *Sutter v. Groen,* 687 F.2d 197, 199 (7th Cir. 1982); *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.,* 642 F.2d 1065, 1075 (7th Cir.1981).[1] In *Local*

---

1. We acknowledge that *Williams v. Bernhardt Brothers Tugboat Service, Inc.,* 357 F.2d 883, 885 (7th Cir.1966), disallowed a Rule 54(b) certification entered three months after the filing of a notice of appeal. We note, however, that one party in *Williams* contested the district court's power to enter the belated order, unlike the situation here. We further observe that the *Williams* decision has engendered criticism from this Court. *See United States v. Bastanipour,* 697 F.2d 170, 173 n. 1 (7th Cir.1982), *cert. denied,* 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d

*P–171*, for example, this Court allowed a district court to amend an otherwise appealable order after the filing of a notice of appeal so as to add a Rule 54(b) certificate.[2] *Local P–171*, 642 F.2d at 1073. In so holding, we remarked that the Supreme Court had displayed "a pragmatic willingness to overlook purely formal deficiencies in appeal procedures if they neither unfairly prejudice the litigants nor unduly interfere with orderly judicial administration." *Id.* We further observed that dismissal of the appeal due to the belated certification would be "empty paper shuffling" because the same papers would likely be before the court in a matter of months after appellants went through "the empty formality of obtaining another certification and filing another notice of appeal." *Id.* at 1074.

Other federal courts of appeals have likewise adopted a practical approach to belated certification under Rule 54(b). *See, e.g., Freeman v. Hittle*, 747 F.2d 1299, 1302 (9th Cir.1984); *Dawson v. Chrysler Corp.*, 630 F.2d 950, 955 n. 4 (3d Cir.1980), *cert. denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Gumer v. Shearson, Hammill & Co.*, 516 F.2d 283, 285 (2d Cir.1974). These courts have held belated certification pursuant to Rule 54(b) sufficient to invoke appellate jurisdiction in the absence of prejudice to any party litigant. *E.g., Freeman v. Hittle*, 747 F.2d at 1302. The Supreme Court, moreover, has permitted belated certification in an analogous context involving 28 U.S.C. § 1292(b). *Marrese v. American Academy of Orthopaedic Surgeons*, —— U.S. ——, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985).[3]

Some federal courts, however, have denied the district courts the power to enter belated certification orders, and have insisted that the courts issue Rule 54(b) certificates prior to the filing of a notice of appeal. *See, e.g., Mullins v. Nickel Plate Mining Co.*, 691 F.2d 971, 971–72 (11th Cir.1982); *A.O. Smith Corp. v. Sims Consolidated Ltd.*, 647 F.2d 118, 120–21 (10th Cir.1981). *See also Kirtland v. J. Ray McDermott & Co.*, 568 F.2d 1166, 1169–70 (5th Cir.1978); *Oak Construction Co. v. Huron Cement Co.*, 475 F.2d 1220, 1220–21 (6th Cir.1973) (per curiam). We decline to require such formality in the context of Rule 54(b) appeals.

This Court, accordingly, shall accept the district court's invocation of our appellate jurisdiction pursuant to its belated certification order. We note that the Lac Courte Oreilles Indians do not seek dismissal of this appeal for lack of appellate jurisdiction, and thus do not claim any prejudice as a result of the district court's belated action. Under these circumstances, this Court holds, consistently with *Local P–171*, 642 F.2d 1065 (7th Cir.1981), and *Sutter v. Groen*, 687 F.2d 197 (7th Cir.1982), that it has jurisdiction over the State's appeal.

Much of the discussion by the parties of their respective positions on the merits of this appeal centers on the additional sentence added in the next to the final paragraph of the original slip opinion and its accompanying footnote. In retrospect, this Court might have been well advised simply to have denied the petition for rehearing, leaving it to the capable district judge to give "further consideration as to the per-

---

358 (1983); *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d at 1073.

**2.** The district court in *Local P–171* had in fact amended its previous partial judgment to include a 28 U.S.C. § 1292(b) certification for interlocutory appeal. This Court treated the section 1292(b) certification as a Rule 54(b) certification because the Court found that the section 1292(b) certification satisfied the requirements of Rule 54(b). *Local P–171, Amalgamated Meat Cutters and Butcher Workmen of North America v. Thompson Farms Co.*, 642 F.2d at 1071.

**3.** In *Marrese*, the district court certified an interlocutory order for immediate appellate review after the defendant had filed a notice of appeal on another issue. Here the district court certified its partial judgment for Rule 54(b) review after the State had filed a notice of appeal from the same judgment. Despite this factual difference between *Marrese* and this case, however, we believe that the *Marrese* decision demonstrates the Supreme Court's practical approach to appealability rules.

missible scope of State regulation over the LCO's exercise of the usufructuary rights" as directed in the opinion.

In its request for clarification included in the petition for rehearing the State adverted to various factual matters particularly with relation to lands which had been patented to private persons subsequent to the 1854 treaty. As this Court was of the opinion from its examination of the case that the LCO's did not possess absolute usufructuary rights but that these were subject to extinction if the lands were needed for settlement, the Court determined that it would be helpful to the district court if this were indicated.

█ The district court, however, in its order under appeal apparently gave literal construction to the words "are not privately owned," fixing the time as of the denial of the petition for rehearing in this Court, March 8, 1983, and holding that the usufructuary rights would be limited to those lands that were not privately owned as of that date. We cannot agree with this narrow construction and particularly with the limitation to the specified date of March 8, 1983. A crystal ball is not available to foretell the direction of growth of settlement in some areas of the State, even those which are now regarded as rural or quasi-wilderness. We decline to speculate on what demographic changes might occur in future years. The ceded territories were ceded for the purpose of eventual settlement. Some may never be settled but others may be, and that settlement by going into private hands simply should not be subject to the reserved usufructuary rights. We therefore hold that the setting of a date preserving the rights into perpetuity must be set aside.

The State has expressed concern on this appeal not only about lands which might become, and remain, private subsequent to March 8, 1983, but also as to lands which now or hereafter may, having become private, thereafter become public lands. The resolution of this matter is not one this Court is in a position to address. It should be first subject to attention by the district

court and may well require evidentiary hearings in that court's continuing jurisdiction.

We do not accept the State's contention that our footnote language "have not passed into private ownership" means that once the passage has occurred by patenting that thereafter the right is completely extinguished. This construction of our language is in effect saying that the passing to private ownership is a laundering process and that the words should be construed as "having passed through."

We can only refer to some of the conceivable situations, all of which should be addressed by the district court on facts which it develops. Certainly, we doubt very much that a private owner should be permitted to defeat the reserved rights by acquiring land on a patent with the collusive intent of extinguishing the rights by returning the land into the State public domain upon acquisition. Another aspect of the problem is one which was adverted to in oral argument that some land is now in the public domain, whether having passed through private ownership or not, on which schools, highways, and hospitals are located. These might seem to be a part of settlement of a previously unsettled territory and would certainly call for a closer examination of the specific facts by the district court. Factors such as public safety and welfare might conceivably enter into any decision to the extent, if any, to which the reserved rights might be viable. It would seem that if the public safety and welfare at such areas are off-bound for non-Indian hunting and fishing and similar rights characterized as usufructuary, the Indians should have not greater rights. Again, however, we cannot say what a particular situation might reflect.

█ It is appropriate once again to say that the whole thrust of *LCO I* was that usufructuary rights survived after the treaty of 1854 and that those rights must be interpreted as the Indians understood them in 1837 and 1842. Footnote 14 of our revised opinion indicated that the Seventh Circuit thought that the Indians understood

them in the mid-1800's to be that they were subject to and limited by the demands of settlers. We regard "settlement" by non-Indians as being synonymous with "private ownership." We also observe that Wisconsin's obligation to honor the usufructuary rights of the Indians is no more or no less than was the federal government's obligation prior to Wisconsin's statehood.

Finally, we make it clear on remand that to which we adverted only by implication because it was not the focus of this Court's attention on the first appeal, namely that the usufructuary rights might be subject to some conservation regulations. *See* 700 F.2d at 343 and n. 1. While the LCO's in the exercise of their rights are relieved of licensing requirements and no doubt from other restrictions, nevertheless we think that public policy which would benefit the Indians as well as all others might well enter into the picture. We doubt that extinction of species or even wholesale slaughter or a substantial detriment to the public safety is a reasonable adjunct to the rights reserved by the Indians. These matters again can best be determined by appropriate exploration by the district court.

Accordingly, the judgment of the district court is vacated and the case is remanded to the district court for further proceedings consistent with this opinion. The parties shall each bear their respective costs on appeal.