STATE of Wisconsin, Plaintiff-Respondent,

v.

Adam W. MATTHEWS, Defendant-Appellant.

STATE of Wisconsin, Plaintiff-Respondent,

v.

Jeremy J. HUSBECK, Defendant-Appellant.†

*Nos. 00–3440–CR, 00–3476–CR. Submitted on briefs June 25, 2001.—Decided September 5, 2001.*

2001 WI App 243

(Also reported in 635 N.W.2d 601.)

†Petition to review denied 1-29-02.

On behalf of the defendant-appellant, Jeremy J. Husbeck, the cause was submitted on the briefs of *Jane Krueger Smith*; on behalf of the defendant-appellant, Adam W. Matthews, the cause was submitted on the briefs of *John C. Gower*, both of Oconto Falls.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Thomas L. Dosch*, assistant attorney general.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. CANE, C.J.[1] Adam Matthews and Jeremy Husbeck appeal from a circuit court order denying their motion to dismiss charges against them for shining deer while hunting or possessing a firearm, as parties to a crime. At issue is the State of Wisconsin's authority to regulate the off-reservation, treaty-based hunting rights of two members of the Keweenaw Bay Indian Community, a Chippewa tribe located in the upper peninsula of Michigan.

¶ 2. It is undisputed that the State can regulate off-reservation, treaty-based hunting rights for conservation purposes, as long as the State establishes that the regulation it seeks to enforce is reasonable and necessary for conservation purposes and does not dis-

---

[1] On January 10, 2001, we granted leave to appeal the circuit court's order pursuant to WIS. STAT. RULE 808.03(2). Originally assigned as a one-judge appeal under WIS. STAT. § 752.31(2), this case was reassigned to a three-judge panel by order dated August 8, 2001. *See* WIS. STAT. RULE 809.41(3). All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

criminate against Indians. The issue presented here is whether the State may also regulate off-reservation, treaty-based hunting rights for the protection of public health and safety. This case is unique in that it addresses issues that were already decided with respect to members of Wisconsin's six Chippewa tribes after seventeen years of federal litigation often referred to as the *LCO* case.[2]

¶ 3. We conclude that the State may regulate the defendants' off-reservation exercise of treaty-based hunting rights for the protection of public health and safety if the State establishes that the disputed regulation is reasonable and necessary for that purpose and does not discriminate against Indians. Therefore, we affirm the circuit court's order and remand for further proceedings.

### BACKGROUND

¶ 4. The background facts are undisputed. Matthews and Husbeck (the defendants) were arrested while deer hunting in Marinette County. They were both charged, as party to a crime, with violating WIS.

---

[2] At issue in the *LCO* case was the scope and exercise of the Chippewa's usufructuary rights (treaty-reserved rights to hunt, fish, trap and gather on non-reservation lands) in ceded lands in the northern third of Wisconsin. *See Lac Courte Oreilles Band v. Wisconsin*, 760 F.2d 177, 178 (7th Cir. 1985) (*LCO II*). The litigation resulted in numerous decisions of the district court and the court of appeals. We will address the most relevant of those decisions later in this opinion. The State notes that neither party appealed the final decision in that litigation, *see Lac Courte Oreilles Band v. Wisconsin*, 775 F.Supp. 321 (W.D. Wis. 1991) (*LCO VIII*), and, therefore, the parties continue to be bound by the decision. The Keweenaw Bay Indian Community was not a party in the *LCO* case.

STAT. § 29.314(3)(a), which prohibits shining deer while hunting or possessing certain weapons.[3] The defendants assert that their tribe was a signatory to the Treaty of 1842, and that they therefore have the right to exercise treaty-reserved rights to hunt, fish, trap and gather on non-reservation lands (collectively, usufructuary rights) in Wisconsin.[4]

¶ 5. The defendants moved to dismiss the charges on subject matter jurisdiction and comity grounds. They argued that the State lacked jurisdiction to regulate treaty hunting and fishing rights on ceded territory covered by the Treaty of 1842. They also asserted that the Keweenaw Bay Indian Community has jurisdiction over the defendants' activities.

¶ 6. The court held two hearings on the motion to dismiss. The parties agreed that the threshold question presented was whether the State could regulate the defendants' usufructuary rights for the purpose of protecting public health and safety.[5] Thus, the circuit court

---

[3] WISCONSIN STAT. § 29.314(3) provides in relevant part: "SHINING DEER OR BEAR WHILE HUNTING OR POSSESSING WEAPONS PROHIBITED. (a) *Prohibition.* No person may use or possess with intent to use a light for shining deer or bear while the person is hunting deer or bear or in possession of a firearm, bow and arrow or crossbow."

The defendants were also charged with hunting deer during a closed season in violation of WIS. ADMIN. CODE § NR 10.01(3)(e), but the State voluntarily agreed to dismiss those charges.

[4] The parties agreed in the circuit court to defer litigation of that issue, pending the outcome of the court's decision with respect to state regulation. Accordingly, we do not decide whether the defendants have usufructuary rights in Wisconsin.

[5] It is well established that a state may impose reasonable and necessary nondiscriminatory regulations on Indian usu-

was asked to assume, for purposes of the motion, that the Keweenaw Bay Indian Community has usufructuary rights in Wisconsin pursuant to the Treaty of 1842. Additionally, the court did not address whether the Keweenaw Bay Indian Community has jurisdiction over the defendants' alleged actions in this case.[6]

¶ 7. The circuit court held that the State may regulate the exercise of usufructuary rights for the protection of public health and safety if the State establishes that the disputed regulation is reasonable and necessary for that purpose and does not discriminate against Indians.[7] In doing so, the court adopted the reasoning employed by the district court in *Lac Courte Oreilles Band v. Wisconsin*, 668 F.Supp. 1233, 1237–39

---

fructuary rights for conservation purposes. *See Puyallup Tribe v. Department of Game*, 391 U.S. 392, 399 (1968). At issue here is whether state regulations that protect public health and safety are also permissible. The State maintains that it has not conceded its right to prove to the circuit court that the statute at issue has a conservation purpose that would also justify its enforcement against the defendants.

[6] As we explain later in this opinion, the *LCO* case established that the six Wisconsin tribes may preclude the enforcement of state hunting regulations against tribal members by enacting and enforcing tribal regulations that accomplish the same objectives. *See Lac Courte Oreilles Band v. Wisconsin*, 668 F.Supp. 1233, 1242 (W.D. Wis. 1987) (*LCO IV*). We have not been asked to address whether the Keweenaw Bay Indian Community would also have the power to preclude state regulation and, therefore, do not decide the issue.

[7] The circuit court actually began to hear testimony from the State in support of its claim that the deer shining statute is reasonable and necessary and does not discriminate against Indians. However, the court ultimately ended testimony, concluding that the most efficient course of action would be to allow the defendants time to file an interlocutory appeal on its legal ruling.

(W.D. Wis. 1987) (*LCO IV*), which decided the same issue with respect to Wisconsin's six Chippewa tribes. The circuit court did not address whether Wisconsin case law also supported its conclusion.

¶ 8. The circuit court entered a written order (1) denying the defendants' motion to dismiss; and (2) indicating that in order to establish subject matter jurisdiction, the State will be required to prove that WIS. STAT. § 29.314(3)(a) is reasonable and necessary for the purpose of protecting public health and safety and does not discriminate against Indians. The defendants sought leave to appeal and we granted the motion.

¶ 9. The parties agree on the single issue presented: whether the State may regulate the exercise of the defendants' usufructuary rights for the purpose of protecting public health and safety.[8] We conclude that the State may do so and, therefore, we affirm the circuit court and remand for further proceedings.

### STANDARD OF REVIEW

¶ 10. Where, as here, material facts are undisputed, the question presented on appeal is one of law.

---

[8] Neither the defendants nor the State contest the circuit court's conclusion that the State will be required to prove, "in an evidentiary proceeding and by a preponderance of the evidence, that [WIS. STAT.] § 29.314(3)(a) is reasonable and necessary for purposes of protecting public health and safety and does not discriminate against Indians." Moreover, it appears that the defendants have agreed that the circuit court should apply the analysis established by the district court in *LCO IV*, 668 F.Supp. at 1239. We have not been asked to decide, and therefore do not address, whether that analysis is identical to the analysis employed in state conservation cases prior to *LCO IV*, such as *State v. Newago*, 134 Wis. 2d 420, 397 N.W.2d 107 (Ct. App. 1986).

*See State v. Big John*, 146 Wis. 2d 741, 748, 432 N.W.2d 576 (1988). Whether statutory provisions apply to a particular set of facts is also a question of law. *Id.* An appellate court decides questions of law independently without deference to the circuit court. *Id.*

### DISCUSSION

¶ 11. The defendants assert that they have the same usufructuary rights in the ceded territory as the Chippewa whose rights were determined in the *LCO* case. However, they argue that the district court's conclusion that the State may regulate usufructuary rights for the protection of public health and safety was wrong. They also contend that Wisconsin case law does not establish the State's right to regulate usufructuary rights for the protection of public health and safety.

¶ 12. In contrast, the State argues that under Wisconsin case law, the State may regulate the exercise of usufructuary rights for the protection of public health and safety.[9] The State also argues that although the defendants are not bound by the *LCO* case because their tribe was not a party, this court should adopt and apply against the defendants that case's holding on regulation for the protection of public health and safety.

¶ 13. We begin our analysis with a review of Wisconsin case law, by which we are bound. *See State v. Lossman*, 118 Wis. 2d 526, 533, 348 N.W.2d 159 (1984)

---

[9] We note that the State has acknowledged that although there are several Wisconsin cases that specifically address the extent to which the State may regulate usufructuary rights for conservation purposes, "the body of Wisconsin case law addressing the question of whether the State may so regulate in the interest of health or safety is somewhat smaller and, in some cases at least, less direct."

(the court of appeals is bound by prior decisions of the supreme court); *Cook v. Cook*, 208 Wis. 2d 166, 190, 560 N.W.2d 246 (1997) (the court of appeals may not overrule, modify or withdraw language from a previously published decision of the court of appeals). Then, we examine the *LCO* case decisions most relevant to this appeal.[10] Although the parties agree that those decisions are not binding on this court, *see State v. Mechtel*, 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993) (determinations on federal questions by either the federal circuit courts of appeal or the federal district courts are not binding upon state courts), we are free to adopt the district court's reasoning and therefore consider the cases in some detail.

## I. Wisconsin case law

¶ 14. In *State v. Gurnoe*, 53 Wis. 2d 390, 192 N.W.2d 892 (1972), our supreme court held that although the Chippewa have a right to continue fishing in Lake Superior, "such a grant of rights does not foreclose the state from exercising police power to control fishing in Lake Superior even by Indians who claim fishing rights under [the 1854] treaty." *Id.* at 410. The court, citing *Puyallup Tribe v. Department of Game*, 391 U.S. 392, 399 (1968),[11] concluded that the State should be given the opportunity to prove that the regulations allegedly violated by tribal members are reasonable and

---

[10] For additional analysis of the *LCO* case, *see* Kenneth D. Nelson, *Wisconsin, Walleye, & the Supreme Law of the Land: An Overview of the Chippewa Indian Treaty Rights in Northern Wisconsin*, 11 HAMLINE J. PUB. L. & POL'Y 381 (Fall 1990).

[11] The Supreme Court in *Puyallup*, held that the "overriding police power of the State, expressed in nondiscriminatory measures for conserving fish resources, is preserved." *Puyallup*,

necessary for the preservation of fish in the State of Wisconsin. *Gurnoe*, 53 Wis. 2d at 410.

¶ 15. However, the court in *Gurnoe* also took one additional step: the court held that the State should also have the opportunity to show that its regulations "are necessary in the exercise of other valid police powers." *Gurnoe*, 53 Wis. 2d at 410. The court stated: "The circuit court suggested, for example, that the regulations relating to the marking and placement of gill nets might be required to protect boaters on Lake Superior. Under [Supreme Court precedent], such an interest would be valid." *Id.* at 411.[12]

¶ 16. In *State v. Whitebird*, 110 Wis. 2d 250, 251, 329 N.W.2d 218 (Ct. App. 1982), this court concluded that Wis. Stat. § 30.51(1) (1981), requiring boats operating on Lake Superior to display valid state certificates, could be enforced against enrolled members of an Indian band. *See id.* We concluded that the statute did not infringe on the Indians' rights to fish "where, when, and with what they want." *Id.* at 252–53. However, we also observed, citing *Gurnoe*, that even if § 30.51(1) had some minimal effect on fishing rights, "such an effect would not preclude Wisconsin's enforcement of [the statute] against band members on Wisconsin waters because its purpose is public safety." *Whitebird*, 110 Wis. 2d at 253.

¶ 17. Finally, in *Big John*, the court held that the State had jurisdiction to enforce Wis. Stat. § 30.51(1) (1986), requiring state certificates on boats operating

391 U.S. at 399. However, the State's regulation must "meet[] appropriate standards" and "not discriminate against the Indians." *Id.* at 398.

[12] The State relies on this language for the proposition that Wisconsin case law establishes that the State may regulate the tribes' usufructuary rights to protect public health and safety.

on state waters, against tribal members operating motorboats off the reservation. *Big John*, 146 Wis. 2d at 743–44. The court concluded that enforcement of the statute did not impermissibly infringe upon the tribe's treaty-protected fishing rights. *Id.* at 752. However, the court also discussed the general case law concerning state regulation of Indians exercising treaty rights. *Id.* at 749–50. Citing *Puyallup, LCO IV* and other cases, the court observed that some treaty rights may limit the extent to which state laws can be applied to Indians off-reservation, noting that the burden is on the State to show that the restrictions are reasonable and necessary for conservation purposes.[13] *Big John*, 146 Wis. 2d at 750.

## II. The *LCO* Case

¶ 18. In *Lac Courte Oreilles Band v. Voigt*, 700 F.2d 341 (7th Cir. 1983) (*LCO I*), the court of appeals recognized that the Chippewa have usufructuary rights and remanded the case to the district court for determination of several issues, including the permissible scope of state regulation over the Indians' exercise of their rights. *Id.* at 365. In *Lac Courte Oreilles Band v. Wisconsin*, 760 F.2d 177 (7th Cir. 1985) (*LCO II*), the court again directed the district court to consider the scope of state regulation, explaining:

---

[13] The defendants seize on this "conservation" language in support of their contention that Wisconsin recognizes that the State may regulate usufructuary rights only for conservation purposes. The State, on the other hand, argues that this language merely cites one example of a state's authority to regulate treaty rights. Additionally, the State notes that the opinion actually cites *LCO IV*, the same case that recognized that the State could also regulate for the purpose of protecting public health and safety.

While the [tribes[14]] in the exercise of their rights are relieved of licensing requirements and no doubt from other restrictions, nevertheless we think that public policy which would benefit the Indians as well as all others might well enter into the picture. We doubt that extinction of species or even wholesale slaughter or a substantial detriment to the public safety is a reasonable adjunct to the rights reserved by the Indians.

*LCO II*, 760 F.2d at 183.

¶ 19. In *LCO IV*, the district court addressed the scope of permissible state regulation of the tribes' usufructuary rights. First, the court recognized that the parties agreed that the State may regulate where reasonable and necessary for conservation purposes. *See LCO IV*, 668 F.Supp. at 1237. Second, the court held that the State was not limited to regulating solely for conservation purposes. *Id.* at 1238.

¶ 20. The district court's conclusion that state regulation was not limited to conservation purposes was based on its interpretation of both federal and state case law. First, the court recognized that courts addressing treaty fishing rights in the Pacific Northwest had consistently limited states' regulatory authority to the issue of conservation or preservation of the resource. *Id.* at 1237 (citing *Washington v. Washington State Comm. Pass. Fishing Vessel Ass'n*, 443 U.S. 658, 682 (1979) ("Although nontreaty fishermen might be subjected to any reasonable state fishing regulation serving any legitimate purpose, treaty fishermen are immune from all regulation save that required for conservation."); and *Puyallup*, 391 U.S. at 398 (treaty

---

[14] After the original suit was filed by the Lac Courte Oreilles Tribe, the five other Lake Superior Chippewa tribes located in Wisconsin intervened by stipulation as plaintiffs and were thereafter active in the litigation. *See LCO II*, 760 F.2d at 178.

89

right to fish may not be qualified, but aspects of fishing "may be regulated by the State in the interest of conservation")).

¶ 21. Second, the district court noted that other courts have indicated that tribal treaty rights may be subject to the exercise of other police powers, such as regulation for the protection of public safety. *See LCO IV*, 668 F.Supp. at 1237 (citing *LCO II*, 760 F.2d at 183; and *Gurnoe*, 53 Wis. 2d at 410–11).

¶ 22. After recognizing the two lines of cases, the district court concluded that the State's regulatory power was not limited to the sole purpose of conservation or preservation of the resources. *See LCO IV*, 668 F.Supp. at 1238. In doing so, the court distinguished *Fishing Vessel Ass'n*:

> Unlike the case law arising from the Northwest, which primarily concerns the single resource of Pacific salmon, here the plaintiff tribes' usufructuary rights extend to dozens or even hundreds of resources, including several game animals and birds. . . . The use of a variety of weapons for hunting alone may operate to confer on the state certain interests not present in the Northwest fishing rights cases.

*LCO IV*, 668 F.Supp. at 1238. The court also limited the scope of the ruling, explaining:

> This does not mean, however, that the state may regulate the tribes' treaty rights for any purpose. The state's proposal that it may regulate for any legitimate purpose finds no support in the law. The tribes' federally protected rights may not be subordinated to every state objective or policy. . . . The treaty-guaranteed usufructuary rights of the plaintiff tribes may be regulated by the state only in certain narrowly defined circumstances.

90

*Id.*

¶ 23. The court concluded that one of the specific instances in which the State can regulate usufructuary rights is in the interest of public health and safety. *Id.* at 1239. The court stated, "[I]t appears logical that if the state may intrude upon treaty reserved rights to preserve a species or resource, it may intrude as well to preserve its citizens from certain public health or safety hazards." *Id.* at 1238–39.

¶ 24. The court also held that the State's public health and safety regulations are subject to the same heightened level of scrutiny as its conservation measures:

> The state may regulate the tribes' off-reservation treaty rights where the regulations are reasonable and necessary to prevent or ameliorate a substantial risk to the public health or safety, and do not discriminate against the Indians. A public health and safety regulation is reasonable if it is appropriate to its purpose. Such a regulation is necessary if it meets a three part test. First, the state must demonstrate that there is a public health or safety need to regulate a particular resource in a particular area. This requires a showing by the state that a substantial detriment or hazard to public health or safety exists or is imminent. Second, the state must show that the particular regulation sought to be imposed is necessary to the prevention or amelioration of the public health or safety hazard. And third, the state must establish that application of the particular regulation to the tribes is necessary to effectuate the particular public health or safety interest. Moreover, the state must show that its regulation is the least restrictive alternative available to accomplish its health and safety purposes. Finally, as the second prong of the legal standard, the state regulations may not discriminatorily harm the Indians or discriminatorily favor non-treaty harvesters.

91

*Id.* at 1239.

¶ 25. In a subsequent decision, the district court applied this test to the State's prohibition on shining deer. *See Lac Courte Oreilles Band v. Wisconsin*, 740 F.Supp. 1400, 1423 (W.D. Wis. 1990) (*LCO VII*). After considering trial testimony, the court concluded that the State's prohibition on shining deer is a "narrowly drawn, non-discriminatory restriction on [the tribes'] hunting rights that is necessary to protect the safety of persons in the ceded territory. It imposes a minimal infringement on [the tribes'] rights in comparison to the great danger night hunting presents to public safety." *Id.*

¶ 26. The district court concluded that the State could enforce its deer shining regulation against the tribes, "except insofar as [the tribes] incorporate the same prohibition into their own tribal codes." *Id.* This latter exception incorporated the court's earlier holding that the tribes may regulate their members' usufructuary activities "for any legitimate purpose," and thereby preclude state regulation, provided that the tribal regulations "adequately address legitimate state concerns in the areas of conservation of resource and public health and safety." *See LCO IV*, 668 F.Supp. at 1242.

¶ 27. Ultimately, the *LCO* case concluded with a final order that included a reiteration of the district court's ruling on deer shining: "[The State] may enforce the prohibition on shining of deer contained in [Wis. Admin. Code] § NR 13.30(1)(q) until such time as [the tribes] adopt regulations identical in scope and content." *Lac Courte Oreilles Band v. Wisconsin*, 775 F. Supp. 321, 324 (W.D. Wis. 1991) (*LCO VIII*). Notably, the final order incorporated a stipulation by the parties

that the order is binding on the individual members of Wisconsin's six Chippewa tribes, as well as on the tribes. *Id.* at 325.

## III. Case law application

¶ 28. We conclude (1) state case law supports the State's contention that it may regulate usufructuary rights for the purpose of protecting public health and safety; (2) the district court's analysis in the *LCO* case is persuasive and provides additional justification for affirming the circuit court; and (3) United States Supreme Court precedent does not dictate a different result.

### A. State case law supports the State's position

¶ 29. *Gurnoe* signaled approval for the potential application of the State's public health and safety regulations to tribes exercising their usufructuary rights. *See Gurnoe*, 53 Wis. 2d at 410–11. We do not read any subsequent Wisconsin case as addressing this issue more squarely or as altering *Gurnoe's* conclusion. Although *Big John* explicitly stated that the burden is on a state to show that restrictions are reasonable and necessary for conservation purposes, we agree with the State that the court was citing one specific example of permissible state regulation, rather than implicitly overruling *Gurnoe. See Big John*, 146 Wis. 2d at 750.

### B. The State's position is consistent with the *LCO* case

¶ 30. We agree with the analysis and conclusions with respect to state regulation for public health and safety that the district court reached in the *LCO* case. We find especially compelling the court's observation

that "it appears logical that if the state may intrude upon treaty reserved rights to preserve a species or resource, it may intrude as well to preserve its citizens from certain public health or safety hazards." *See LCO IV*, 668 F.Supp. at 1238–39. Our decision affirming the circuit court is consistent with *LCO IV*, and will help to promote consistency in the State's regulation of usufructuary rights for Chippewa from tribes located both inside and outside Wisconsin.[15] Our decision will also help to protect Wisconsin's citizens, because although the circuit court has yet to determine whether the deer shining statute at issue here is reasonable and necessary and does not discriminate against Indians, we are confident that there are public health and safety regulations that will satisfy this test. For example, regulations prohibiting shooting high-powered rifles near homes or schools are likely to meet this standard.

### C. Supreme Court precedent does not dictate reversal

¶ 31. The defendants' primary argument for reversal is that the *LCO* case and Wisconsin case law are inconsistent with United States Supreme Court precedent. Specifically, the defendants identify conflict with the Court's ruling in *Fishing Vessel Ass'n*, where the Court stated: "Although nontreaty fishermen might be subjected to any reasonable state fishing regulation serving any legitimate purpose, treaty fishermen are immune from all regulation save that required for conservation." *Fishing Vessel Ass'n*, 443 U.S. at 682.

---

[15] As the State noted before the circuit court, adopting the defendants' argument would create the situation where Chippewa from tribes outside Wisconsin could be less restricted by state regulation than Chippewa from tribes located in Wisconsin.

Like the district court, we acknowledge that this language could be read as foreclosing state regulation for any purpose besides conservation. *See LCO IV*, 668 F.Supp. at 1237. However, we also agree with the district court's analysis that Northwest fishing cases are distinguishable, and that the Supreme Court did not expressly contemplate how its ruling would apply to the exercise of other usufructuary rights. *See id.* at 1237–38.

¶ 32. Moreover, we note that *LCO IV*, released in 1987, has never been overturned. The Supreme Court has not directly addressed *LCO IV*, and we are unaware of any Supreme Court case involving a state's attempt to regulate a tribe's usufructuary rights for the purpose of protecting public health and safety. We are convinced that *LCO IV* is consistent with *Fishing Vessel Ass'n.*

¶ 33. The defendants also assert that the Supreme Court's decision in *Minnesota v. Mille Lacs Band*, 526 U.S. 172 (1999), proves that the district court decided *LCO IV* incorrectly. *Mille Lacs* affirmed the usufructuary rights of Chippewa Indians in Minnesota. *Mille Lacs*, 526 U.S. at 175–76. In doing so, the Court noted that it had "repeatedly reaffirmed state authority to impose reasonable and necessary nondiscriminatory regulations on Indian hunting, fishing, and gathering rights in the interest of conservation." *Id.* at 205. The Court stated: "This 'conservation necessity' standard accommodates both the State's interest in management of its natural resources and the Chippewa's federally guaranteed treaty rights." *Id.*

¶ 34. The defendants contend that this language establishes that state regulation of usufructuary rights for conservation purposes is the only permissible purpose for regulation. They explain that the district court's basis for distinguishing *Fishing Vessel Ass'n* in

*LCO IV* —that *Fishing Vessel Ass'n* did not contemplate
the broad spectrum of resources to be hunted that was
present in *LCO IV* —is no longer persuasive because
*Mille Lacs* considered the same broad spectrum of
resources at issue in *LCO IV*. The defendants
argue: "When [the district court] made [its] predic-
tions in 1987 and again in 1990, no such [broad spec-
trum] case had reached the United States Supreme
Court. [*Mille Lacs*] clearly establishes that [the district
court's] prediction was wrong."

¶ 35. We disagree. Although *Mille Lacs* recog-
nized the rights of states to regulate in the interest of
conservation, the Court did not address whether a state
could also regulate to protect public health and safety.
We do not read the Court's language as excluding the
possibility that regulation may be appropriate for other
compelling reasons.

¶ 36. We recognize that the defendants disagree
with this conclusion and rely on Justice Thomas's
dissent in *Mille Lacs* in support of their argument that
the majority in *Mille Lacs* intended to foreclose all state
regulation of usufructuary rights except for conserva-
tion purposes. The defendants explain, "Any doubt that
the 'conservation purposes only standard' of [*Fishing
Vessel Ass'n* was reaffirmed in [*Mille Lacs*] can be fully
and finally dispelled by reading the dissenting opinion
of Justice Thomas in [*Mille Lacs*]." Justice Thomas
wrote:

> Most important, all the cases that the majority cites in
> support of the proposition that States may enforce
> against Indians in their exercise of off-reservation
> usufructuary privileges only those regulations neces-
> sary for purposes of conservation, ante, [526 U.S. at
> 204–205], involved the same or substantially similar
> treaty language reserving a right to hunt or fish.

*Mille Lacs*, 526 U.S. at 224 (Thomas, J., dissenting).

¶ 37. Justice Thomas's dissent does not persuade us to change our conclusion that *Mille Lacs* did not overrule the district court's reasoning in *LCO IV*. First, Thomas's dissent itself acknowledges that "Minnesota's regulatory authority is not at issue here." *See Mille Lacs*, 526 U.S. at 226 (Thomas, J., dissenting). Indeed, that is part of Justice Thomas's concern: that the Court passed on an important federalism question in dicta. *See id.* at 221.

¶ 38. Second, to the extent Justice Thomas characterizes the majority opinion as allowing "*only* those regulations necessary for purposes of conservation," *see id.* at 224 (emphasis added), we respectfully disagree with his conclusion. That portion of the majority opinion to which Justice Thomas refers does not include the word "only." *See id.* at 204–05. Instead, it simply restates prior Supreme Court precedent recognizing the conservation necessity. We do not read the *Mille Lacs* majority opinion as foreclosing the possibility of state regulation of tribes' usufructuary rights for the purpose of protecting public health and safety.

CONCLUSION

██

¶ 39. We conclude that the State may regulate the defendants' exercise of usufructuary rights for the protection of public health and safety if the State establishes that the disputed regulation is reasonable and necessary for that purpose and does not discriminate against Indians. Therefore, we affirm the circuit court's order and remand for further proceedings.

*By the Court.*—Order affirmed and cause remanded with directions.